## No. 16,961.

EVERETT *v.* BARRY.
(252 P. [2d] 826)

Decided January 19, 1953.

Messrs. GALLIGAN & FOLEY, for plaintiff in error.

Messrs. BARRY & HUPP, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

ON August 11, 1952, one John R. Barry filed his verified petition in dependency on the usual printed form in the juvenile court, reciting that he was a resident of the City and County of Denver and attorney for the maternal grandmother of Diane Everett, four years of age, Kathleen Everett, two years of age, and Rita Everett, one year of age, and alleging on his oath as true of his own knowledge that said children were dependent or neglected children, for the reasons that they were dependent

upon the public for support; destitute, homeless or abandoned; that they had not proper parental care or guardianship, and all the other grounds contained in said form. At the bottom of the petition there was added the following typewritten allegation:

"Respondent obtained an emergency furlough and brought mother of above-mentioned children, Margaret Everett, and all of above-mentioned children to Denver from Limestone, Maine. Margaret Everett was so ill upon arrival, it was necessary to have her placed in Fitzsimons General Hospital, Psychopathic Ward. Above-mentioned children, and others have told maternal grandparents that respondent has abused the mother of said children to such an extent that her health was affected. Petitioner asks for legal custody of said children for his client, Margaret Heeren, so that said children cannot be returned to the home of respondent until it is definitely known that a satisfactory home may be provided for them. Petitioner asks the Court to determine what is to the best interest of said children."

Petitioner prayed that said children be declared and adjudged by the court to be dependent and ordered committed to the State Home for Dependent Children or other institution.

The father of the children, William F. Everett, appeared and opposed said petition. Hearing was had to the court on September 25, 1952, and at its close, without making any findings of fact, the court sustained the petition, adjudged said children to be dependent and ordered them placed in the custody of their maternal grandparents.

The evidence was without substantial conflict. That of petitioner consisted of the testimony of two witnesses. Thomas P. Heeren, the maternal grandfather, testified that his daughter, the mother of the children, had been married to their father for about six years. In July 1952, while they were residing at an army air base in the State of Maine, in response to a telephone call, witness

sent his daughter two hundred and fifty dollars "to come home." She and her husband and their three children came by plane, arriving about July 17. She was very nervous and upset and could hardly talk. He took the daughter and children to his home and the father promptly went back to Maine. The children continued to remain in his home, but after two weeks their mother was taken to Fitzsimons General Hospital and placed in the psychopathic ward, where her condition had improved wonderfully and the doctor indicated that she would be in good health again in about three weeks. The children had been receiving perfect care in his nice home. The father gave the Heerens one hundred and fifty dollars before returning to his army base, and sent them another hundred dollars September 6th. They had further received two allotment checks, payable to Mrs. Everett, of one hundred and sixty-five dollars each, making a total of five hundred and eighty dollars received and available for support of the family within ten weeks. Mrs. Heeren had endorsed the allotment checks, cashed them, and placed that money in a vault. Witness never had been in the State of Maine and knew nothing about the environment of the children there.

The other witness for petitioner was a younger sister of the children's mother, who testified that upon arrival at the airport the mother could not carry on a coherent conversation and was "off mentally"; that her condition became worse at her parents' home and she was taken to Fitzsimons General Hospital where she had improved. Witness had helped care for the children while at the Hereen home, but had never been in the Everett home and knew nothing as to the children's environment there.

Motion to dismiss the petition was made at the close of petitioner's testimony and denied by the court. The father testified that his home was in Florida where his parents still resided. For more than ten years he had been in the United States Air Force, where he held the rank of Master Sergeant at the time of his discharge on

September 16th. He had been stationed at an air force base in Maine since April, and prior to that had been stationed at Albuquerque, New Mexico, from July 1951. He had assisted his wife in caring for the children. He had purchased a new Cape Cod style house of six rooms where they lived at the Maine base. On the night of July 10, his wife had a nervous breakdown and reported to the police that her husband had a gun and was going to kill her, when in fact he had no gun and had in nowise injured or threatened his wife. He telephoned her mother and, in response to her invitation, brought his wife, with the three children, to her home in Denver. Upon his return three days later to his base, he told the Heerens that he would be back in September. It was his purpose, if his wife was not well, to arrange either with her parents to keep the children, or, if they didn't want to, then he would take them to his home in Florida. He wanted his wife to rejoin him and them, and would send for her or come and get her whenever she desired. After being discharged from the air force, he returned to Denver and went first to the hospital to see his wife, then to the Heeren residence, where at first he was refused admittance by the grandmother, but, upon insistence, was admitted. He testified as to the farm home of his parents in Florida where his children could be cared for if his wife was unable to maintain a home for them. He had in no way mistreated his wife and there had been no quarrel between them. His wife's condition was such that the doctor reported, and he expected, she would be released from the hospital in not more than a month. Two witnesses who had been familiar with his home, one in Albuquerque and the other at the Maine base, testified as to his having a good home and as to his good care of his wife and children.

There is not a word of testimony or a scintilla of evidence in the record to justify even suspicion of abuse or lack of care of the children or their mother, or in any respect to support the adjudication of dependency. The

grandfather testified that the children had been receiving excellent care while temporarily left with them, and they were being generously paid for any expense incident to their care. The record showed without question the good home and devoted care they had previously enjoyed, and the ability and intent of their father to maintain a proper home for them upon their being returned to him, whether or not their mother made sufficient recovery to join him in the home, as he hoped and expected she would.

Even if the wording of our statutes be too complcated for simple understanding, certain rules of law regarding our juvenile court and rights of custody have been so often declared by us that even the wayfaring man need not err therein. These rules are as follows: 1. That the juvenile court is a statutory court with no jurisdiction beyond that expressly given by statute; 2. That the jurisdiction so given does not include jurisdiction of contests over custody of children in behalf of, or between, individuals, whether parents, or otherwise; 3. That such jurisdiction attaches only in proceedings brought, not in behalf of any person, but solely where children are found delinquent or have been so circumstanced, neglected or imposed upon as to require the state to take over their custody or act otherwise for their protection; 4. That in a dependency proceeding, such as that before us, the question to be resolved is not the comparative rights of different claimants of custody, but solely that of whether or not the existing custody and surroundings of the child are such that it is the duty of the state, as parens patriae, to take over its custody and make it a ward of the state; 5. That a dispute between parents or between a parent and any other person as to right of custody is not such a controversy as to justify an adjudication of dependency; 6. That a parent, if a fit and suitable person, has the prior right of custody of his children over a grandparent or any other person or the state; 7. That a parent is pre-

sumed to be a fit and suitable person to have the custody of his children, and that such presumption can be overcome only by convincing evidence to the contrary.

It is apparent from the typewritten paragraph added to the printed form of petition that it was not the true intent of petitioner to rely on the statutory grounds of dependency, as alleged therein, but simply to hold custody of these minor children away from their father, who was their proper guardian. The statement in the petition that "Petitioner asks for legal custody of said children for his client, Margaret Heeren, so that said children cannot be returned to the home of respondent until it is definitely known that a satisfactory home may be provided for them," demonstrates such purpose and eloquently discloses the impropriety of the entire proceeding. The very suggestion that a parent, who has formerly made a good home for his family, should be deprived of the custody of his children "until it is definitely known that a satisfactory home may be provided for them," is astounding, and the humiliating of such a parent by decreeing his children to be dependent or neglected and making them wards of the state, is incredible.

 A petition in dependency must be filed, not in behalf of any individual, but only in behalf of the state, for the purpose of protecting a minor child. Such petition should not be filed by any petitioner, and particularly not by an attorney at law, who is an officer of the court, except singly for the protection of the child; it should be filed only upon credible information and belief that the child is so circumstanced that for its own protection and well-being it should be taken from existing custody and become a ward of the state; one assuming to sign such a petition equally assumes the obligation to present evidence sustaining it, and one should not verify any allegation of such a petition as true of his own knowledge, unless the facts set forth therein are within his personal knowledge.

The judgment is reversed and the case remanded with instruction to dismiss the proceeding and immediately award the custody of the minor children to their father.

MR. JUSTICE BRADFIELD not participating.