**John HAMMAN, Petitioner,**

**v.**

**The COUNTY COURT In and For the COUNTY OF JEFFERSON, State of Colorado and the Honorable Linda Palmieri, one of the Judges thereof; Arlene K. Hamman, now known as Arlene K. Bolton, by and through her next friend and mother, Mary Victoria Bolton; and Mary Victoria Bolton, Respondents.**

No. 87SC14.

Supreme Court of Colorado, En Banc.

April 11, 1988.

Shade, Doyle, Klein, Otis & Frey, Henry C. Frey, Greeley, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice Knaizer, First Asst. Atty. Gen., Denver, for respondents Jefferson County Court and the Honorable Linda Palmieri.

Ruderman & Sturniolo, Andrew G. Martelon, Denver, for respondents Arlene K. Bolton and Mary V. Bolton.

VOLLACK, Justice.

The petitioner, John Hamman (the father), petitioned this court for certiorari review of the district court's affirmance of the county court's order granting a name change to Hamman's daughter at the request of his ex-wife. We granted certiorari to address two issues. First, we must determine whether the county court has jurisdiction to rule on the name change of a minor child of divorced parents under section 13–15–101, 6 C.R.S. (1973). Second, we must decide whether the county court abused its discretion or exceeded its jurisdiction when it granted a name change for a minor child at the request of the custodial parent, when the parents were divorced, and the non-custodial parent was not given notice or an opportunity to be heard. We conclude that the county court did have jurisdiction under section 13–15–101, but that the non-custodial parent was entitled to notice. We therefore conclude that the court erred in ordering the name change requested by the custodial parent without providing notice to the non-custodial parent. We reverse the district court's affirmance and remand with directions to the district court to remand to the county court for proceedings consistent with this opinion.

I.

The petitioner and the respondent entered into a common law marriage in 1977. In the same year, a child was born of the marriage; the child's name was Arlene Hamman. When the parents' divorce decree was entered in 1982, the respondent was given custody of the daughter. The father was given reasonable visitation rights and child support obligations. Subsequently, the respondent remarried and began using her new husband's surname of Bolton. In 1986, the respondent filed a petition[1] in Jefferson County Court pursuant to sections 13–15–101 and –102, 6 C.R.S. (1973), requesting a name change for her daughter Arlene Hamman, who was eight years old at the time. She requested that the daughter's name be changed to Arlene Bolton.

On the same day that the petition was filed, a hearing was held in the county court. The judge elicited testimony from both Mary Bolton and Arlene Hamman. Mary Bolton gave the following testimony:

Q [the judge] Where is her father?

A [Mary Bolton] In Greeley.

---

1. The caption of the petition shows that the petition was actually filed by "ARLENE KAYE HAMMAN [the daughter], by and through her mother and next friend, MARY VICTORIA BOLTON."

Q What is her father's position with regard to her name change?

A He doesn't feel like he really wants her to, but she [Arlene] said then she can't change it until she gets older.

Q So he is opposed?

A Right, but she wants to do it very badly.

Q Tell me what the custody and support situations are.

A I have full custody of her. He pays child support of $145.00 a month, and he sees her every other weekend, depending upon if he has the time.

Q So with knowledge that he opposes it—

A Right.

Q —you are going ahead?

A Right, and she wants to go ahead and do it, too.

The county court granted the petition for the name change at the hearing. The notice by publication requirements of section 13–15–102 were met.[2] The father did not receive actual notice of the petition or the hearing. Hamman did not know his daughter's name had been changed until a week or two later when Arlene told him that her surname had been changed to Bolton.

When Hamman learned that his daughter's surname had been changed, he filed a motion to intervene under C.R.C.P. 24. The motion was denied by the county court. The father then filed a petition in the nature of a writ of prohibition under C.R.C.P. 106(a)(4) in Jefferson County District Court, asserting that the county court had exceeded its jurisdiction, abused its discretion, and denied his due process rights. The district court entered a written order affirming "the orders of the County Court granting the petition for the name change and denying the Plaintiff's Motion to Intervene." The father filed a petition for writ of certiorari with this court, and we granted certiorari on two issues.

**II.**

The first issue we address is whether the county court has jurisdiction to rule upon a petition requesting a name change for a minor child when the child's parents are divorced. The father presents alternative arguments, suggesting that the county court cannot have jurisdiction over a child's name change because that jurisdiction creates a conflict with either the Children's Code or Colorado's Uniform Dissolution of Marriage Act. We disagree.

**A.**

The father contends that only the juvenile court or a district court hearing juvenile matters has exclusive original jurisdiction of a name change petition, based on the statutory definition of "residual parental rights and duties" and the portion of the Children's Code[3] which provides:

**19–1–104. Jurisdiction.** (1) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings: . . . (e) To terminate the legal parent-child relationship, *including termination of residual parental rights and duties*, as defined in section 19–1–103(24); . . .

8B C.R.S. (1986) (emphasis added).

Section 19–1–103(24) states:

"Residual parental rights and responsibilities" means those rights and responsibilities remaining with the parent after legal custody, guardianship of the person, or both have been vested in another person, agency, or institution, including, but not necessarily limited to, the responsibility for support, the right to consent to adoption, the right to reasonable visitation unless restricted by the court, and the right to determine the child's religious affiliation.

8B C.R.S. (1986). The father argues that these two provisions of the Children's Code require the conclusion that only the juvenile court has jurisdiction to rule upon the

---

**2.** It was extremely unlikely that the father would have obtained notice through publication, because he lived in Greeley and publication of the notice was in the Golden Transcript.

**3.** §§ 19–1–101 to 19–11–110, 8B C.R.S. (1986).

name change of a minor child. We disagree.

The juvenile court has "no jurisdiction beyond that expressly given by statute," and the statute primarily provides jurisdiction "where children are found delinquent or have been so circumstanced, neglected or imposed upon as to require the state to take over their custody or act otherwise for their protection." *Everett v. Barry,* 127 Colo. 34, 39, 252 P.2d 826, 829 (1953). The jurisdictional provision, section 19-1-104, also provides "exclusive original jurisdiction" in juvenile court for issuance of support orders, determinations of parentage, adoption orders, and other specific matters which have no relationship to the case at bar. § 19-1-104(1)(f)-(m). The provision relied on by the father grants jurisdiction to the juvenile court in proceedings to "terminate the legal parent-child relationship." § 19-1-104(1)(e). The name change proceeding at issue here bears no relationship to a proceeding terminating a parent-child relationship. Nowhere in the Children's Code do we find a jurisdictional provision supporting the argument that juvenile courts have "exclusive original jurisdiction" over a minor child's name change.

### B.

▆ The father's second jurisdictional argument is that jurisdiction is precluded in the county court because the district court has jurisdiction to order a name change as part of a dissolution proceeding that is properly before the district court. The jurisdictional language of the name change statute requires that a person desiring a name change file a petition and affidavit in "the district, superior, or county court in the county of the petitioner's residence." § 13-15-101, 6 C.R.S. (1973).[4] He suggests that because a district court has jurisdiction to order a name change in certain limited circumstances, the county court should not have jurisdiction under the name change statute.

In *In re Marriage of Nguyen,* 684 P.2d 258 (Colo.App.1983), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 785, 83 L.Ed.2d 779 (1985), the court of appeals recognized that Colorado law provides for concurrent jurisdiction in name change proceedings. The court noted that the name change procedure found in section 13-15-101 "is in addition to, not in exclusion of, the common law method for change of name." *Id.* at 260. Relying on this distinction, the court of appeals held that "the [district] court has the power, founded in common law, to order a change of name of a minor child of the parties in a dissolution of marriage action," even though there is no express authorization to do so under the Uniform Dissolution of Marriage Act.[5] The court of appeals held:

[T]he court should consider those factors applicable to a statutory name change in determining whether to grant a parent's request.... [A] court has wide discretion in ordering a change of name and should not deny an application unless special circumstances were found to exist. ... [S]uch a special circumstance might exist if the change contributed to the estrangement of the child from a non-custodial parent who wishes to foster and preserve the parental relationship.

*Nguyen,* 684 P.2d at 260. This common law right is not governed by a specific provision in the statute. A name change in a dissolution can be ordered only when the district court has retained jurisdiction over the parties seeking dissolution, and can only provide for name changes of the spouses and children involved during the course of the dissolution proceeding.

In contrast, all other persons seeking a name change may proceed under section 13-15-101. Section 13-15-101 provides a mechanism by which "every person desiring to change his name" may do so, not merely persons who are involved in a dissolution proceeding. This concurrent juris-

---

4. Section 13-15-101 was amended in 1987. The only substantive change in the statute is that a party seeking a name change now files a petition "in the district or county court," rather than "the district, superior, or county court." § 13-15-101, 6A C.R.S. (1987).

5. §§ 14-10-101 to -133, 6B C.R.S. (1987).

diction of the county and district courts is not improper. We reject the petitioner's argument that the county court was without jurisdiction to rule in this case, and conclude that jurisdiction was properly in the Jefferson County Court.

## III.

We also granted certiorari to decide whether the county court erred when it granted the name change for the minor child, at the request of the mother, the custodial parent, without providing notice to the father, the non-custodial parent.

Colorado's name change statute provides:

**13–15–101. Petition—proceedings.**
Every person desiring to change his name may present a petition to that effect, verified by affidavit, to the district, superior, or county court in the county of the petitioner's residence. The petition shall set forth the petitioner's full name, the new name desired, and a concise statement of the reason for such desired change. *The court shall order such change to be made,* and spread upon the records of the court in proper form, *if the court is satisfied that the desired change would be proper, and not detrimental to the interests of any other person.*

6 C.R.S. (1973) (emphasis added).[6]

The provision requiring public notice provides:

**13–15–102. Publication of change.**
Public notice of such change of name shall be given at least three times in a newspaper published in the county where such person is residing within twenty days after the order of the court is made, and if no newspaper is published in that county, such notice shall be published in a newspaper in such county as the court directs.

6 C.R.S. (1973).

The requirements of sections 13–15–101 and –102 regarding filing of the petition and publication of the change were met in this case. The father contends, however, that the county court erred in granting the mother's requested change of his daughter's surname without providing actual notice to him. We agree.

### A.

█ Whether a non-custodial parent has an interest or right in a child's bearing his or her surname after the child's parents are divorced is a question of first impression in Colorado. The majority of jurisdictions which has addressed the issue, however, has held that a parent has "a recognized interest" in his or her child's surname. *In re Tubbs,* 620 P.2d 384, 387 (Okla.1980). "The paternal interest has been alluded to by various terms-a natural right, a fundamental right, a primary or time-honored right, a common-law right, a protectible interest and even a legal right." *Id.* at 386 (footnotes omitted).[7]

A majority of states has also held, and we agree, that a non-custodial parent is, at a minimum, an interested party in a proceeding to change the surname of the child. *See Laks v. Laks,* 25 Ariz.App. 58, 60, 540 P.2d 1277, 1279 (1975) ("[T]he father has a protectible interest in having his child bear the parental surname in accordance with the usual custom, even though the mother may have been awarded custody of the child."); *Robinson v. Hansel,* 302 Minn. 34, 35–37, 223 N.W.2d 138, 140 (1974) ("A change in surname, so that a child no longer bears his father's name, not only obviously is of inherent concern to the natural father, so that he should have standing to

---

6. *See supra* note 4.

7. Most jurisdictions which have recognized a right or interest of the non-custodial parent in use of the surname have not specified whether this right falls under the life, liberty, or property classifications of the due process clause. *See, e.g., Carroll v. Johnson,* 263 Ark. 280, 284, 565 S.W.2d 10, 13 (1978) (The non-custodial parent's "protectible interest" is held to be included under the "'life, liberty or property' umbrella." *Id.* at 288, 565 S.W.2d at 15.); *Tubbs,* 620 P.2d at 387 (Without specifying whether it is classified as life, liberty, or property, non-custodial parent's interest in child's surname is said to be "the subject of constitutional protection under both the Due Process and Equal Protection Clauses.") *Id.* (footnote omitted).

object, but is in a real sense a change in status having significant societal implications."); *Cohan v. Cunningham*, 104 A.D. 2d 716, 716, 480 N.Y.S.2d 656, 657 (1984) ("[A] father has a recognized interest in having his child bear his surname ... [but] neither parent has a superior right to determine the surname of the child."); *Brown v. Carroll*, 683 S.W.2d 61, 63 (Tex.Civ.App. 1984) ("It is undeniable that a father has a protectable interest in having his children bear his surname."). We agree with the majority of jurisdictions addressing this question, and conclude that when a child was given the non-custodial parent's surname prior to the dissolution of the parents' marriage, a non-custodial parent has an interest in a minor child's use of his or her surname.

### B.

■ Because a non-custodial parent has an interest in a minor child's use of his or her surname after the parents are divorced, it follows that a non-custodial parent is an interested party in a name change proceeding under section 13–15–101.[8] In construing a statute, we assume that the legislature intended a just and reasonable result. *People v. Schwartz*, 678 P.2d 1000, 1006 (Colo.1984). In order to achieve a just and reasonable result in the application of this statute, we conclude that a non-custodial parent is included within the "any other person" language of the statute.

The language of section 13–15–101 requires a court which is ruling on a name change petition to determine if (1) the desired change is proper, and (2) the desired change is "not detrimental to the interests of any other person." § 13–15–101, 6 C.R.S. (1973). Because a non-custodial parent is an interested party under the name change statute, a parent must be afforded notice when a name change is sought in order for the court to make the necessary determinations.

■ Section 13–15–102 requires notice by publication after the hearing. However, notice by publication is not sufficient when a non-custodial parent is an interested party and the name and the address of the non-custodial parent are known or readily ascertainable. *Tubbs*, 620 P.2d at 385. Notice by publication is inadequate partly because publication does not occur until after the court has entered the name change order. "[A] person's legally protected interest may not be adversely affected in a judicial proceeding 'unless a method of notification is employed which is reasonably calculated to give him knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard.'" *Id.*

The Texas Court of Appeals applied a similar statute to virtually identical facts in *Eschrich v. Williamson*, 475 S.W.2d 380 (Tex.Ct.App.1972), (applied in *Scucchi v. Woodruff*, 503 S.W.2d 356, 358 (Tex.Ct. App.1973)). In *Eschrich*, the minor child's mother, who was the custodial parent, filed a petition to have the child's name changed to the surname of her second husband. The name was changed without notice to the father, the non-custodial parent. The governing statute provided:

Whenever it shall be to the interest of any minor to change his name, the guardian or next friend of said minor shall file his application.... The judge of said court, if the facts alleged and proven satisfy him that such change will be for the benefit and interest of the minor shall grant authority to change his original name and adopt another.

*Id.* at 380–81. Even though the statute did not expressly require that notice be given to the non-custodial natural father, the Texas court construed the statute to require notice:

It is the interest of the minor that is paramount in any court action involving minors. Certainly under some circumstances it could be to a minor's best

---

**8.** In concluding that a non-custodial parent has such an interest, we hold this interest to be a parent's statutory right as an "other person" who has an interest that may be detrimentally affected by a name change under section 13–15– 101, rather than a constitutional right. In order for a non-custodial parent who is an interested party to exercise this right, he or she is entitled to reasonable notice prior to the name change proceeding.

interest to retain his natural father's name. We hold that the natural father has an interest in a proceeding such as this and must be given notice. This notice is guaranteed by the Fourteenth Amendment to the United States Constitution and Art. 1, Sec. 19, of the Texas Constitution, and as much a part of [the statute quoted above], as if explicitly written into the article by the legislature.

*Id.* at 383 (citations omitted).

The highest court of West Virginia used the same reasoning to arrive at the same result in *In re Harris,* 160 W.Va. 422, 236 S.E.2d 426 (1977). A child's surname was changed at the request of the custodial parent; the publication by notice requirement of the West Virginia statute was met. The court held:

> [U]nder our general powers over procedure in courts of equity we hold that before a court can proceed to consider a petition for a change of name when there is a living father, actual notice must be given to the father if his whereabouts are known or with reasonable diligence could be ascertained.

*Id.* at 424–26, 236 S.E.2d at 428.

We adopt the reasoning and the results of *Eschrich* and *Harris,* and conclude that "the natural father has an interest in a proceeding such as this and must be given notice ... as if [the notice requirement was] explicitly written into the article by the legislature."

As an interested party, a non-custodial parent is entitled to reasonable notice that the custodial parent has filed a petition requesting a name change for the child or children. Reasonable notice is notice reasonably calculated to notify the non-custodial parent of the pending action in a meaningful time and manner, so that the non-custodial parent can attend the hearing if he or she wishes to participate in the proceeding or voice objection to the name change.

### C.

▉ In making the determination whether the requested name change is detrimental to "the interests of any other person," the court must take into consideration the best interests of the minor child. Some courts have held that "the sole consideration when parents contest a surname should be the child's best interest." *Schiffman v. Schiffman,* 28 Cal.3d 640, 647, 620 P.2d 579, 583, 169 Cal.Rptr. 918, 922 (1980); *In re Harris,* 160 W.Va. 422, 424–26, 236 S.E.2d 426, 428 (1977). Other courts have suggested additional factors for consideration, such as the motive and interests of the custodial parent. A court may properly consider "whether the mother seeks to advance her own interest in bringing the petition and whether the mother's interest is also in the best interest of the child." *In re Marriage of Omelson,* 112 Ill.App.3d 725, 729–31, 68 Ill.Dec. 307, 311, 445 N.E. 2d 951, 955 (1983). Other factors appropriate for consideration by the court ruling on the name change are the length of time the minor child has used the surname, the impact of the requested name change on the mother-child relationship and on the father-child relationship, *id.,* the child's preference, and any misconduct by the non-custodial parent which would justify a name change, or make the non-custodial surname "possibly deleterious." *Brown v. Carroll,* 683 S.W.2d 61, 63 (Tex.Ct.App.1984); *see Laks v. Laks,* 25 Ariz.App. at 61, 540 P.2d at 1280.

The necessity for consideration of these factors in determining what is in the child's best interests supports our conclusion that the non-custodial parent is entitled to reasonable notice. If the parent desires to do so, the parent may attend the hearing and testify as to his views about the requested name change. A court cannot properly assess the best interests of the child and other appropriate considerations if the interested non-custodial parent is denied the opportunity to be present at the name change hearing. *Harris,* 236 S.E.2d at 429.

In coming to this conclusion, we emphasize that we are not granting to a non-custodial parent the power to necessarily prevent a name change by making his objections known. Rather, we hold that the interested non-custodial parent is entitled to reasonable notice. Whether the particular facts before a court constitute reasonable notice is a factual question for the lower court's determination. The question

of whether the requested name change is in the best interests of the child is also a factual determination for the trial court, subject to the abuse of discretion standard of review.

We reverse the district court's order and remand with directions to remand to the county court for proceedings consistent with this opinion.

LOHR, J., concurs in part and dissents in part, and MULLARKEY, J., joins in this concurrence and dissent.

LOHR, Justice, concurring in part and dissenting in part:

I agree with the majority that the county court had jurisdiction to rule on the name change of a minor child of divorced parents under section 13–15–101, 6 C.R.S. (1973). I do not agree with the majority, however, that the petitioner, a noncustodial father, was entitled to notice of a name-change proceeding with respect to his minor child under the provisions of sections 13–15–101 and –102, 6 C.R.S. (1973). Furthermore, I would hold that such notice is not constitutionally required. I would therefore hold that the county court did not err in ordering the name change requested by the mother, who had legal and physical custody of the child, without providing notice to the petitioner.

Section 13–15–101, 6 C.R.S. (1973), which governs name changes in Colorado,[1] provides:

> Every person desiring to change his name may present a petition to that effect, verified by affidavit, to the district, superior, or county court in the county of the petitioner's residence. The petition shall set forth the petitioner's full name, the new name desired, and a concise statement of the reason for such desired change. The court shall order such change to be made, and spread upon the records of the court in proper form, if the court is satisfied that the desired change would be proper, and not detrimental to the interests of any other person.

Section 13–15–102, 6 C.R.S. (1973), the notice provision of the name change statute, states:

> Public notice of such change of name shall be given at least three times in a newspaper published in the county where such person is residing within twenty days after the order of the court is made, and if no newspaper is published in that county, such notice shall be published in a newspaper in such county as the court directs.

This statute contains no provision for notice to be given to anyone in advance of a hearing on a petition for a change of name. Only after a name change has been granted is notice required, and that notice is to be accomplished by publication. Therefore, there is no basis in the language of the statute to support the petitioner's contention that he was entitled to notice and an opportunity to be heard concerning a petition for change of name of his minor child.

The petitioner concedes that the statute contains no express requirement that notice be given to him prior to a hearing on the petition for change of name. The petitioner argues, however, that such a notice requirement is implicit in section 13–15–101. The petitioner refers to the language of section 13–15–101 that provides that "[t]he court shall order [a name] change to be made ... if the court is satisfied that the desired change would ... not [be] detrimental to the interests of any other person." The petitioner contends that a court cannot make such a determination without giving an interested noncustodial parent notice of the hearing and an opportunity to be heard.

The petitioner's argument, which the majority appears to accept, *see* majority op. at 748 n. 8, ignores the plain language of the statute. The statute contains no requirement that notice be given to all persons whose interests might be detrimentally affected by a change of name. When the language of a statute is clear, a court must give effect to the statute as written. *E.g.*,

---

1. In 1987, the statute was amended to refer to "the district or county court" rather than "the district, superior, or county court." As amended, the statute is found in § 13–15–101, 6A C.R.S. (1987).

*Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227, 230 (Colo.1984). Moreover, the legislature's inclusion of a provision for notice after entry of an order for change of name shows that it considered the notice question. Had it desired to include a requirement for notice in advance of the hearing, the legislature could have done so within the text of the notice provision. The legislature chose not to provide such a requirement. I would hold, therefore, that neither section 13–15–101 nor section 13–15–102 requires that notice be given to a noncustodial parent before a court orders a name change for that parent's minor child.

The petitioner argues that if the statute contains no requirement for notice to him in advance of the hearing, it violates the due process clause of the Colorado Constitution.[2] Article II, section 25, of the Colorado Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." The resolution of a due process question involves a two step analysis. The first question is whether the petitioner was deprived of a constitutionally protected interest. *People v. Lamb,* 732 P.2d 1216, 1221 (Colo.1987). Only if the interest is determined to be constitutionally protected does the question of how much process is due arise. *See People v. Chavez,* 629 P.2d 1040, 1045–46 (Colo.1981). The petitioner's argument assumes that he has some constitutionally protected interest in his minor child's name. The petitioner does not make clear the exact nature of the interest.[3] Presumably, the only possible type of interest the petitioner would have in his daughter's name is some sort of quasi-property interest. I would hold that whatever may be the correct characterization of the petitioner's interest, it is not an interest in "life, liberty or property" within the meaning of the due process clause of the Colorado Constitution.

At common law, there is no property right to the use of a name. *Rio v. Rio,* 132 Misc.2d 316, 504 N.Y.S.2d 959, 960 (Sup.Ct. 1986) (at common law, no one has a property right to a personal name such that one can keep another from using it); *Petition of Falcucci,* 355 Pa. 588, 50 A.2d 200, 202 (1947) (same). Although hereditary surnames are customary, that custom has never amounted to a common law legal right of a father to require that his children bear his surname. *Laks v. Laks,* 25 Ariz.App. 58, 540 P.2d 1277, 1279 (1975). Thus, at common law a minor could change his name without resorting to legal formality. *Laks,* 540 P.2d at 1279. For purposes of a due process analysis, while a father may have "a recognized interest in having his child bear his surname," *Cohan v. Cunningham,* 104 A.D.2d 716, 480 N.Y.S.2d 656, 657 (1984), the interest is not a property interest entitled to due process protection. *Laks,* 540 P.2d at 1279 (father's interest is not property interest entitled to constitutional protection; rather, surname reflects custom of persons to bear the names of their parents).

In *Fulghum v. Paul,* 229 Ga. 463, 192 S.E.2d 376 (1972), the Georgia Supreme Court considered this issue in the context of a fact situation somewhat similar to that of the present case. In *Fulghum,* the state name change statute required advance notice by publication of a petition for name change but contained no requirement that actual notice be given. The plaintiff, a divorced noncustodial father, sought to vacate a judgment changing the surname of his minor child to that of the child's stepfather. The plaintiff contended that the statute was unconstitutional under the due process clauses of the state and federal constitutions because it did not require personal service upon him as the biological father of the child. The court stated that as a policy

**2.** The petitioner mentions specifically only the due process clause of the Colorado Constitution. It is not altogether clear, however, whether he also relies on the due process requirement contained in the fourteenth amendment to the United States Constitution. Concerning the question at hand, the analysis and result would be the same under either constitutional provision.

**3.** In one part of his brief, the petitioner implies that a father has a liberty interest in his daughter's name, citing *Roe v. Conn,* 417 F.Supp. 769 (M.D.Ala., N.D.1976). The court in *Roe,* however, held that a child had a liberty interest in his *own* name. The court made no reference to any liberty interest on the part of the child's parent in his child's name. *See Roe,* 417 F.Supp. at 782–83.

matter, it would seem appropriate that a father present in the state with a known address should receive notice of his minor child's petition for name change. The court also conceded that the father had a certain protectible interest in his child's name. The court held, however, that the interest was not a property right as contemplated by the due process clause of either the federal or state constitution. *Fulghum*, 192 S.E.2d at 377–78. Therefore, it was the prerogative of the legislature "to prescribe what notice, if any, is required prior to the court's action upon a petition for change of name." *Id.* at 377.[4]

I would follow the reasoning of the Georgia court. The interest of a noncustodial parent in his or her child's name, while certainly important to the parent, is not of constitutionally protected magnitude. Therefore, the lack of an actual notice provision in Colorado's name change statute does not violate due process under our constitution. This is not to affirm the wisdom of the present notice requirements. It may well be that sound policy requires that notice be given to a noncustodial parent before his or her minor child's name is changed. This, however, is a question best left for the legislature to address. Indeed, the myriad contexts and considerations involved in name-change proceedings suggest that this is a subject peculiarly appropriate for the legislative forum, where all relevant considerations can be exposed, debated and resolved. *See generally Rio v. Rio*, 132 Misc.2d 316, 504 N.Y.S.2d 959 (Sup.Ct.1986). Absent any statutory or

constitutional requirement that actual notice be provided, we have no basis to require such notice.[5]

Neither the name change statute nor the due process clause requires that notice be given to a non-custodial parent prior to the change of the name of that parent's child. Because such notice is not required, I would hold that the county court did not err by ordering that the petitioner's daughter's name be changed without providing prior notice to the petitioner.[6]

MULLARKEY, J., joins in this concurrence and dissent.

---

**4.** Some courts that have considered the issue have held that a father has some kind of constitutionally protectible interest in his child's name, requiring that the father be given notice of a name-change proceeding. *In re Tubbs*, 620 P.2d 384, 387 (Okla.1980) ("The interest comprised within the parental bond is the subject of constitutional protection under both the Due Process and Equal Protection Clauses"); *Eschrich v. Williamson*, 475 S.W.2d 380, 383 (Tex.Ct. App.1972) (father has interest in name-change proceeding concerning his minor child, requiring notice under federal and state constitutions).

**5.** The construction of section 13–15–101 adopted by the majority would seem to require that in advance of hearing in each case a determination

must be made as to the identity of the persons whose interests might be detrimentally affected by a name change. This will be a daunting task, from both a factual and legal standpoint, and there will be little assurance of the accuracy of the result. I find nothing in the statutory scheme to suggest that the legislature contemplated it.

**6.** The petitioner asserts no other basis for his contention that the county court erred in ordering the change of name. There is no occasion in this case to consider the quality and quantum of evidence necessary to support a court's required determination under § 13–15–101 that "the desired change would be proper, and not detrimental to the interests of any other person."