25CA0400 Marriage of Macaluso 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0400
City and County of Denver District Court No. 19DR3504
Honorable Marie Avery Moses, Judge

---

In re the Marriage of

William Roy Macaluso III,

Appellant,

and

Mika Nicole Gilbert,

Appellee.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

The Law Office of C. Robert Biondino Jr., P.C., C. Robert Biondino Jr., Highlands Ranch, Colorado, for Appellant

No Appearance for Appellee

¶ 1     In this post-decree proceeding, William Roy Macaluso, III (father), appeals the district court's order adopting magistrate orders that denied his motion to modify parenting time and decision-making responsibilities for T.M.G. (the child) and addressed, without resolving, father's motion to change the child's last name.  We affirm.

## I.     Background

¶ 2     Father and Mika Nicole Gilbert (mother) have one child and never married.  Months before the child's birth, father was charged with domestic violence against mother.  After the child's birth, the child resided with mother, and father was not involved in mother's decision-making.  When the child was three years old, father petitioned the court for an allocation of parental responsibilities. Father also alleged that the child was unsafe with mother and moved the court to order the police to remove the child from mother's home.  The next day, mother requested a civil protection order against father.

¶ 3     At a temporary orders hearing, the court denied father's motion and issued a temporary protection order against father.  The court appointed a child and family investigator (CFI), who later filed

a status report. The court ordered that the decision-making orders previously entered would remain in place, leaving mother with sole decision-making responsibility.

¶ 4 Later, Father filed his first motion to modify decision-making responsibilities. The court reappointed the CFI and ordered an updated report. Father then filed a motion for contempt, and mother filed a motion to restrict father's parenting time. The court denied these motions.

¶ 5 At permanent orders, the court again awarded mother sole decision-making responsibility. Father filed a second motion for contempt and a motion to reconsider the ruling granting mother sole decision-making. The court granted father's second motion for contempt insofar as it requested that mother provide him with the names of the child's medical providers and the child's social security number, and that he be added to the child's birth certificate. The court denied father's motion to reconsider its previous ruling on the allocation of decision-making responsibility.

¶ 6 As relevant here, father then filed his second motion to modify decision-making responsibilities. The district court ordered the parties into mediation. After mediation ended unsuccessfully,

father moved to appoint another CFI, which the court granted.  The newly appointed CFI filed a report.

¶ 7    A magistrate then held a hearing on father's second motion to modify decision-making responsibilities.  The magistrate denied father's motion.  Father petitioned the district court for review of the magistrate's order, which the district court denied.

## II.    Modification of Decision-Making

¶ 8    Father contends that the magistrate did not properly apply sections 14-10-131(2) and 14-10-123.4, C.R.S. 2025, and erroneously concluded that retaining mother's sole decision-making responsibility was in the child's best interest.  We are not convinced.

### A.    Standard of Review

¶ 9    When, as here, we review a district court's order reviewing a magistrate's order, we must accept the magistrate's factual findings unless they are clearly erroneous.  *See In re Parental Responsibilities Concerning G.E.R.,* 264 P.3d 637, 639 (Colo. App. 2011); *see also* C.R.M. 7(a)(9) (a magistrate's findings of fact may not be altered unless clearly erroneous).  Our review of the district court's decision is effectively a second layer of appellate review; we

3

apply the same clearly erroneous standard to the magistrate's findings as does a district court. *G.E.R.*, 264 P.3d at 638-39. Factual findings are not clearly erroneous unless there is no support for them in the record. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

¶ 10 We review questions of law de novo, including whether the court applied the proper legal standard. *See In re Marriage of Young*, 2021 COA 96, ¶ 9.

## B. Our Record Review is Limited

¶ 11 Father did not provide the reviewing district court with a transcript of the magistrate's modification hearing or ruling — nor does he acknowledge his failure to do so in his appellate briefing. In the absence of a transcript, the district court presumed that the magistrate's factual findings regarding modification of decision-making were supported by evidence presented at the hearing. *See* C.R.M. 7(a)(9) (a reviewing court presumes that the magistrate's ruling is supported by the evidence when no transcript of the proceedings is provided); *see also In re Marriage of Dean*, 2017 COA 51, ¶ 15 (without reviewing the transcripts, we are unable to evaluate the evidence to determine whether it sufficiently supports

4

the magistrate's orders); *In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004) (a party seeking review has burden of providing a record justifying the rejection or modification of that order, and absent such a record, the district court may presume the regularity of the magistrate's proceedings).

¶ 12     A transcript of the modification hearing was made part of the record on appeal to this court.  However, we may not consider it because our review of the district court's order is limited to the record that was before the district court.  *See Dean*, ¶ 14; *see also Rivera*, 91 P.3d at 466.  Accordingly, we consider only father's legal argument.

### C.     Relevant Law

¶ 13     The court must allocate decision-making responsibilities in accordance with the best interests of the child.  §§ 14-10-123.4(1)(a), 14-10-124(1.5), C.R.S. 2025.  Furthermore, pursuant to section 14-10-131(2), the trial court

> shall not modify a custody decree or a decree
> allocating decision-making responsibility
> unless it finds, upon the basis of facts that
> have arisen since the prior decree or that were
> unknown to the court at the time of the prior
> decree, that a change has occurred in the
> circumstances of the child or the child's

custodian or party to whom decision-making responsibility was allocated and that the modification is necessary to serve the best interests of the child.

And the court must retain the prior decree's allocation of joint decision-making unless

- the parties agree to the modification;

- the child has been integrated into the family of the petitioner with the consent of the other party;

- there has been a modification of parenting time that warrants a change in decision-making responsibilities;

- one parent has consistently consented to the other parent making individual decisions; or

- "[t]he retention of the allocation of decision-making responsibility would endanger the child's health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."

§ 14-10-131(2)(a)-(c).

¶ 14    "What constitutes endangerment is a highly individualized determination, and we won't disturb the trial court's findings on the issue if they are supported by the record." *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26 (citations omitted).

### D.    Analysis

¶ 15    The magistrate applied the correct legal standards.

¶ 16    As an initial matter, as required by sections 14-10-124(1.5)(b) and 14-10-124(4)(a)(II)(A), the magistrate considered father's domestic violence case before finding that joint decision-making was impossible because mother still feared father.  The record indicates that father's domestic violence charges were dismissed by the prosecution in 2016, a month before the child's birth.  Nevertheless, even if father had been convicted, findings of domestic violence are not dispositive factors in determining parental responsibilities.  *See Pawelec*, ¶ 61 (holding that a finding of domestic violence is not a dispositive factor in determining parenting time).

¶ 17    Applying the factors from section 14-10-131(2)(a)-(c), the magistrate found that the parties had exercised equal parenting time for several years and did not agree to change decision-making

responsibility. Finally, the magistrate considered father's arguments regarding mother's potential endangerment of the child by (1) not providing the contact information for the child's doctors and (2) not changing the child's school. The magistrate, crediting the CFI's report as "thorough and well-reasoned," adopted its recommendations: that mother's decisions were not endangering the child, and that decision-making responsibility should remain with mother.

¶ 18    In the absence of a transcript of the modification hearing or the magistrate's ruling, the reviewing district court properly presumed that the magistrate's findings were supported by the record. And the district court noted, correctly, that the magistrate relied largely on the CFI's recommendations, which also appear in her report.

¶ 19    The court thus applied the proper legal framework for a modification of decision-making responsibility. And given that the court, in the absence of a transcript, properly presumed record support for the magistrate's factual findings, we perceive no abuse of discretion.

¶ 20    We acknowledge that father also asserts that mother failed to provide for the child's best interests because, he alleges, (1) the child slept in mother's living room on an air mattress; (2) mother failed to get the child to school on time; (3) mother did not provide the child with afterschool activities or tutoring; and (4) the child had concerning hygiene.  The record — even in the absence of a hearing transcript — indicates that the court relied on contrary record evidence.

¶ 21    In adopting the CFI's determinations[1] regarding the child's best interest, the court considered that

- the child sleeps in a bedroom;

- the child is frequently a few minutes late to class, but that the child's teacher had "no concerns";

---

[1] The magistrate expressly relied on the CFI's report, which was filed with the court and is included in the record on appeal.  A CFI's report is automatically accepted into evidence without further foundation, unless a party notes an objection in the trial management certificate.  C.R.C.P. 16.2(g)(2)(C); *see also* 14-10-116.5, C.R.S. 2025 (authorizing the appointment of a CFI and the CFI's preparation and filing of a report and providing that the "court shall consider the entirety of the report, as well as any testimony by the child and family investigator, the parties, and any other professionals, before adopting any recommendations made by the child and family investigator").

- mother cannot afford extra activities for the child, and father had arranged for afterschool activities and a tutor; and

- the child "demonstrates good hygiene

¶ 22   Based on this record evidence, and assuming — as we must — that the transcript would have provided similar support, we perceive no error in the magistrate's determination that the child's best interests were not served by a modification of decision-making responsibility.

### III.   Child's Name Change

¶ 23   Father next argues that the magistrate erred by denying his request to change the child's name.  We conclude that we lack jurisdiction to resolve this issue.  In the alternative, we conclude that it is inadequately presented for appellate review.

¶ 24   We review a district court order regarding a requested name change for a minor child for an abuse of discretion.  *In re Marriage of Nguyen*, 684 P.2d 258, 260 (Colo. App. 1983).  "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law."  *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

10

¶ 25    When considering a request for a name change, "the court must take into consideration the best interests of the minor child." *Hamman v. Cnty. Ct.*, 753 P.2d 743, 749 (Colo. 1988). Factors influencing the court's decision include "the length of time the child has used the surname, the potential impact of the requested name change on the child's relationship with each parent, the child's preference, and any misconduct by a parent which would justify a name change." *D.K.W. v. J.L.B.*, 807 P.2d 1222, 1224 (Colo. App. 1990). The court should also look to "the motivation of the parties, the identification of the child as part of a family unit," and any negative consequences for the child that may result if the child's surname differs from that of the custodial parent. *Id.* Whether the requested name change is in the best interests of the child is ultimately a factual determination for the district court. *Hamman,* 753 P.2d at 750.

¶ 26    Here, instead of filing a separate petition or motion for a name change, as required by section 13-15-101(1)(a.5), C.R.S. 2025, father included the following in his trial management certificate: "[t]he minor child's name shall be changed to be hyphenated and include both of her parents' last names." The magistrate

11

interpreted this statement as father's request to change the child's name. However, the magistrate also pointed out that father had not complied with the procedures from section 13-15-101(1)(a.5), and found that father's request was thus improperly pleaded. The magistrate therefore dismissed his request without prejudice.

¶ 27    In its order adopting the magistrate's order, the district court declined to address the name change request because "there is no final order from the Magistrate resolving the issue," and because father did not provide a transcript of the relevant hearing.

¶ 28    We recognize, as the magistrate did, that a division of this court has held that a district court has the power, founded in common law, to order a name change of a minor child of the parties in a dissolution of marriage action without complying with statutory procedures for a name change. *Nguyen*, 684 P.2d at 260 ("The [statutory] procedure for change of name . . . is in addition to, not in exclusion of, the common law method for change of name."). Even assuming that we would agree with *Nguyen*, however, we are unable to address this issue because an order dismissing a request without prejudice is not a final order subject to appeal unless "the circumstances of the case indicate that the action cannot be saved

12

and that the district court's order precludes further proceedings." *Avicanna Inc. v. Mewhinney*, 2019 COA 129, ¶ 1 n.1. Here, the court's order did not preclude father from continuing to seek a name change for the child. Therefore, the order was not final and appealable.

¶ 29 Even if the order in question was final, however, we would reject father's appellate argument because it is inadequately developed for appellate review. Father's opening brief devotes a total of three sentences, along with one case citation, to the name change issue. It does not address the magistrate's reason for denying the request — inadequate pleading — nor does it acknowledge the district court's conclusion that the magistrate's order was not final and appealable or the court's observation that the lack of a hearing transcript hindered its ability to consider father's argument on the merits. Accordingly, because father's contention is unsupported by any substantial argument, we would decline to address it further even if it were properly before us. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a perfunctory or conclusory manner); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th

Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *Topco, Inc. v. State, Dep't of Highways*, 275 Mont. 352, 912 P.2d 805, 812 (1996) ("It is not the function of this Court on appeal to advocate a party's position, to develop arguments or to locate and cite supporting or opposing authority.").

## IV.   Bias

¶ 30    Lastly, we reject father's argument — made for the first time on appeal — that mother's "theatrics" during the hearing biased the magistrate against him and his counsel and violated the Colorado Code of Judicial Conduct.

A.    Applicable Law, Preservation, and Standard of Review

¶ 31    "Basic to our system of justice is the principle that a judge must be free of all taint of bias and partiality." *People v. Jennings*, 2021 COA 112, ¶ 18.  A judge may be disqualified from presiding over a matter based on (1) an appearance of impropriety or (2) actual bias.  *People in Interest of A.P.*, 2022 CO 24, ¶ 26.

¶ 32    The Colorado Code of Judicial Conduct requires a judge to recuse himself from a case based on the appearance of impropriety when "the judge's impartiality might reasonably be questioned."

14

C.J.C. 2.11(A); *see also People in Interest of A.G.*, 262 P.3d 646, 650 (Colo. 2011) (even if a judge may be able to act impartially, "the judge is disqualified nonetheless because a reasonable observer might have doubts about the judge's impartiality"). "The purpose behind disqualifying a judge who has the appearance of partiality is to protect public confidence in the judiciary." *Jennings*, ¶ 19.

¶ 33     "Actual bias, on the other hand, exists when, in all probability, a judge will be unable to deal fairly with a party." *A.P.*, ¶ 28. A claim of actual bias focuses on the "subjective motivations of the judge," *Jennings*, ¶ 20, and requires a showing that a judge "has a personal bias or prejudice concerning a party or a party's lawyer," C.J.C. 2.11(A)(1). Unlike provisions prohibiting a judge from presiding over a case involving an appearance of impropriety, the purpose behind disqualifying a judge for actual bias is to ensure that the parties to a case receive a fair and impartial trial. *A.P.*, ¶ 28; *A.G.*, 262 P.3d at 651. "Only when a judge was actually biased will we question the reliability of the proceeding's result." *A.P.*, ¶ 29.

¶ 34     To establish a claim for actual bias, a party must show that a judge had a "substantial bent of mind against him or her," *People v.*

15

*Drake*, 748 P.2d 1237, 1249 (Colo. 1988), or a "deep-seated favoritism . . . that would make fair judgment impossible," *A.P.*, ¶ 31 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The record must clearly demonstrate the judge's actual bias. *Jennings,* ¶ 28. "Bare assertions and speculative statements are insufficient to satisfy the burden of proof." *A.P.,* ¶ 30. Indeed, disqualification for an actual bias is exceedingly rare. *See, e.g., Jennings,* ¶ 30 (no actual bias when the judge told the defendant's attorney that "when I saw you enter in this case I knew there were going to be issues because there are almost always issues with you"); *People v. Dobler*, 2015 COA 25, ¶ 12 ("While the judge's statements that he would be 'haunt[ed]' by his decision to grant probation showed the judge was affected by his prior decision to be lenient with defendant, it is not enough to establish that the judge was unable to sentence defendant fairly.").

¶ 35     Under C.R.C.P. 97, a party may move to disqualify a judge who is "interested or prejudiced" for or against a party. *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 13. Because father did not file a motion to disqualify the judge in this case (and does not address preservation in his opening brief) this issue is not preserved for

appeal, and we do not consider further whether the magistrate should have recused herself based on an appearance of impropriety.

¶ 36    A claim of actual bias, however, cannot be waived and may be raised for the first time on appeal.[2]  *See Jennings,* ¶ 21; *A.G.,* 262 P.3d at 651-53; *see also Dobler,* ¶ 7.  Although father's appellate argument is only minimally developed and difficult to parse, it can reasonably be read as asserting a claim of actual bias.  Therefore, preservation is not required.

¶ 37    We review de novo a claim for disqualification based on actual bias.  *Dobler,* ¶ 8; *see also Jennings,* ¶ 27.

### B.    Analysis

¶ 38    Father contends that the magistrate demonstrated actual bias at the hearing because, as result of mother's "theatrics" and "emotional outbursts," the magistrate "permitted [m]other to take several breaks, leave the [c]ourtroom, and even called law enforcement to the [c]ourtroom because [m]other was now fearful of not only [f]ather but [f]ather's counsel."  These actions, father

---

[2] Because actual bias may be raised for the first time on appeal, we may look to the hearing transcript that appears in the appellate record even though father did not provide it to the district court when he petitioned for review of the magistrate's order.

contends, demonstrate that mother's conduct "allowed the [m]agistrate to be inappropriately swayed and she lost complete control of the [c]ourtroom."

¶ 39 "[T]rial judges enjoy broad discretion to adopt procedures designed to regulate conduct in their courtrooms and to preserve order during judicial proceedings." *Wilkerson v. Dist. Ct.*, 925 P.2d 1373, 1377 (Colo. 1996). Based on our review of the hearing transcript, we conclude that the magistrate's actions were well within that broad discretion. To be sure, mother reacted poorly to much of the questioning by father's counsel, but the magistrate's management of the situation — which included taking breaks when things became "heated" and instructing father's counsel to refrain from "commentary" — was entirely appropriate. Because nothing in the record clearly establishes actual bias on the magistrate's part, we reject father's argument. *See Jennings*, ¶ 28.

V.    A Word of Warning to Counsel

¶ 40 We find it necessary to address counsel's noncompliance with C.A.R. 28 as well as the tenor of the opening brief (which was the only brief submitted by either party).

18

¶ 41    First, the opening brief does not comply with C.A.R. 28 in several respects.  Many of father's claims about mother's conduct — for example, allegations that mother "moved people in and out of her home, making them the priority over own children," that father "battled with the overall hygiene of the minor child," and "the minor child not being provided meals sufficient to meet the minor child's nutritional needs" — are unsupported by any record citations.  *See* C.A.R. 28(a)(5).  And many of the record citations that do appear in the opening brief cover are imprecise — instead covering large swaths of the court file or the single transcript that was made part of the record on appeal.  *See* C.A.R. 28(a)(7)(a) (briefs must identify "the precise location in the record where the issue was raised and where the court ruled"); *see Black v. Black*, 2018 COA 7, ¶ 67 ("'Judges are not like pigs, hunting for truffles buried in' the parties' submissions.") (alteration and citation omitted).

¶ 42    Although the opening brief lists ten different orders as grounds for "preservation" of the issues raised regarding the allocation of decision-making, it does not acknowledge that the district court denied father's petition for review of the magistrate's order because he failed to provide a transcript of the relevant hearing.  *See*

19

*Marriage of Dean*, ¶ 15. And father's claim of judicial bias does not address the standard of review or preservation at all. *See* C.A.R. 28(a)(7)(A).

¶ 43    We are also troubled by the tone of father's opening brief, which includes repeated ad hominem attacks on mother and the magistrate — including claims that mother engaged in "theatrics" and an assertion that the magistrate and the district court "crucified" father. These intemperate accusations are of a piece with counsel's briefs in the district court, where, among other things, he accused the magistrate of being "blinded by [m]other's theatrics" and wrote that "[s]he should have been awarded an Oscar and not sole decision making."

¶ 44    Counsel's inflammatory approach is counterproductive not only because it "hinders the court in deciding the merits of the appeal," but also because it "debases both the legal profession and the judicial system." *Martin v. Essrig*, 277 P.3d 857, 860 (Colo. App. 2011).

¶ 45    Although we have opted to resolve this appeal on the merits, we remind counsel of his obligation to comply with the Colorado Appellate Rules and his obligations to act civilly toward opposing

parties and the court. Future lapses may be subject to sanctions or other remedies. *See id.* at 861.

## VI. Disposition

¶ 46    The order is affirmed.

JUDGE J. JONES and JUDGE SCHUTZ concur.