COLORADO COURT OF APPEALS               **2016COA125**

Court of Appeals No. 15CA1698
Clear Creek County District Court No. 14JV8
Honorable D. Wayne Patton, Judge
Honorable Ruthanne Polidori, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of J.W. and N.W., Children,

and Concerning C.O.,

Respondent-Appellant.

JUDGMENT AND ORDER VACATED
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE ROMÁN
Harris, J., concurs
Hawthorne, J., concurs in part and dissents in part

Announced August 25, 2016

Robert Loeffler, County Attorney, Sue S. Thibault, Assistant County Attorney, Georgetown, Colorado, for Petitioner-Appellee

Wendy M. Hickey, Guardian Ad Litem

C.O., Pro Se

¶ 1     C.O. (mother) appeals from the judgment terminating the parent-child legal relationships between her and J.W. and N.W. (children) and from the order adjudicating the children dependent or neglected with respect to her.  Because the court issued the adjudication order after the court entered judgment terminating mother's parental rights, and not before, we conclude that the court did not acquire jurisdiction to terminate the parent-child relationship.  In addition, because the adjudication order was entered after mother filed her notice of appeal, we also conclude that the court lacked jurisdiction to enter that order as well. Accordingly, we vacate both the judgment and the order and remand for further proceedings.

## I.  Background

¶ 2     In May 2014, the Clear Creek County Department of Human Services (the department) sought temporary protective custody of J.W., then five years old, and N.W., then ten months old, citing serious (and ultimately fatal) injuries suffered by an unrelated child residing in the home and ongoing concerns about mother's ability to protect the children.  The department noted that the family had been the subject of several previous referrals concerning drug use,

domestic violence, and possible physical abuse of the children, including an allegation that J.O., the children's maternal uncle, had choked J.W. When confronted with the latter allegation, mother was protective of her brother, denying that he would ever do anything to hurt the child.

¶ 3     Soon after being granted temporary custody of the children, the department filed a petition in dependency or neglect, alleging that the children were dependent or neglected for the reason set forth in section 19-3-102(1)(a), C.R.S. 2015, which provides that a child is dependent or neglected if "[a] parent, guardian, or legal custodian has abandoned the child or has subjected him or her to mistreatment or abuse or a parent, guardian, or legal custodian has suffered or allowed another to mistreat or abuse the child without taking lawful means to . . . prevent it from recurring." As factual support for this allegation, the department cited, among other things, mother's lack of protectiveness when faced with the allegation that her brother had choked J.W. Mother denied the allegations.

¶ 4     Shortly before the adjudicatory hearing, the department filed an amended petition in dependency or neglect. This time the

department did not allege that mother had abandoned the children, subjected them to mistreatment or abuse, or allowed another to mistreat or abuse them without taking lawful means to prevent it from recurring. It alleged instead that the children were dependent or neglected for the reasons set forth in section 19-3-102(1)(b), which provides that a child is dependent or neglected if "[t]he child lacks proper parental care through the actions or omissions of the parent," and in section 19-3-102(1)(c), which provides that a child is dependent or neglected if "[t]he child's environment is injurious to his or her welfare."[1]

¶ 5    Mother's adjudicatory trial took place on July 10 and 11, 2014. Following the trial, the jury was asked to decide (1) whether the children were dependent or neglected because their environment was injurious to their welfare; and (2) whether the children were dependent or neglected because they lacked proper parental care through the actions or omissions of their parent, guardian, or legal custodian.

¶ 6    The trial did not result in an adjudication.

---

[1] Father entered a "no fault" admission to the petition, and on July 10, 2014, the court adjudicated the children dependent or neglected with respect to him.

¶ 7    Instead, the jury answered "no" to the question asking whether the children lacked proper parental care through the actions or omissions of their parent, guardian, or legal custodian. It further stated that it was "unable to return an answer" to the question asking whether the children's environment was injurious to their welfare.

¶ 8    On July 14, 2014, a hearing was held to discuss scheduling a new adjudication trial for mother. Rather than delay the proceedings by requesting a retrial, mother chose to admit that the children's environment was injurious to their welfare. The trial court accepted her admission. The parties agree that mother was not offered a deferred adjudication under section 19-3-505(5)(a), C.R.S. 2015, and that the court did not enter a formal order adjudicating the children dependent or neglected at the hearing. *See* § 19-3-505(7)(a) ("When the court finds that the allegations of the petition are supported by a preponderance of the evidence . . . the court shall sustain the petition and shall make an order of adjudication setting forth whether the child is neglected or

4

dependent."). Instead, the court proceeded to adopt the treatment plan that was already in place as her treatment plan going forward.[2]

¶ 9 A few months later, the court terminated mother's parental rights, finding that although mother loved the children and had made efforts to comply with her treatment plan, she could not meet the children's needs.

¶ 10 On October 30, 2015, more than a month *after* mother's parental rights were terminated, the court entered a written order adjudicating the children dependent or neglected with respect to her.

---

[2] In June 2014, a "Family Services Plan" was submitted to the court. Among other things, the department recommended that mother participate in a psychological evaluation and follow the recommendations of the evaluator; participate in weekly individual therapy with a provider that she and the department mutually agreed upon; participate in therapeutic visits with the children and follow any recommendations made by the visit supervisor; and sign all necessary releases of information so that the department could make referrals for services and evaluations, receive information from the service providers and evaluators, and allow providers to communicate with one another to coordinate services. On July 10, 2014, the court adopted the department's recommendations, and on July 14, the court approved those recommendations as mother's treatment plan.

## II. Timeliness of the Appeal

¶ 11     As an initial matter, we address the department's contention that the appeal is untimely with respect to issues arising during the adjudicatory stage of the proceeding.  It argues the appeal of such issues is untimely because, although the court did not sign a written order adjudicating the children dependent or neglected with respect to mother until October 30, 2015, mother acknowledged in her petition on appeal that the adjudication and disposition order was "made" on July 14, 2014.  We disagree that the appeal is untimely.

¶ 12     To begin, mother is appealing an order purporting to terminate her legal relationship with her children; therefore, this is a final appealable order under section 19-1-109(2)(b), C.R.S. 2015.  Simply put, mother contends that the department did not prove all of the essential elements under section 19-3-604(1)(c), C.R.S. 2015.

¶ 13     As for the adjudicatory order, it is well established that "an order or judgment must be reduced to writing and dated and signed before it is a final, appealable order." *People in Interest of O.J.S.*, 844 P.2d 1230, 1233 (Colo. App. 1992) (citing C.R.C.P. 58), *aff'd sub nom. D.A.S. v. People*, 863 P.2d 291 (Colo. 1993).  Thus, if the

court sustains the petition in dependency or neglect and adopts a treatment plan for a parent, but does not reduce the adjudicatory and dispositional orders to writing, those orders are not final and appealable until the entry of a judgment of termination or other final and appealable order. *See People in Interest of T.E.M.*, 124 P.3d 905, 907-08 (Colo. App. 2005) (holding that where the record established that children were adjudicated dependent or neglected and a treatment plan was adopted for the parent, but the orders were not reduced to writing, the orders became appealable upon entry of the judgment of termination).

¶ 14     Here, the court entered a written order purporting to adjudicate the children dependent or neglected with respect to mother and adopt a treatment plan for her, but it did not do so until October 30, 2015, more than a month after entering the judgment terminating her parental rights. Because the termination order was entered before an adjudicatory order was entered, it was the termination order that allowed mother to appeal issues arising during the adjudicatory stage of the proceeding.

## III.  Jurisdiction

### A.  The Termination Order

¶ 15     We next consider whether the trial court had jurisdiction to terminate mother's parental rights before it entered an order adjudicating the children dependent or neglected with respect to her.  We conclude that it did not.

¶ 16     Although mother did not initially raise this issue, in a dependency or neglect proceeding the court's subject matter jurisdiction is based on the fact of the child being dependent or neglected, and a challenge to a court's subject matter jurisdiction may be raised at any time.  *See* § 19-1-104(1)(b), C.R.S. 2015; *People in Interest of N.D.V.*, 224 P.3d 410, 414 (Colo. App. 2009).

¶ 17     In supplemental briefing requested by this court,[3] mother argues that the children were not adjudicated dependent or neglected until after the court entered the written order of adjudication in October 2015, and, therefore, the court did not have jurisdiction to terminate her parental rights.  We agree that when

---

[3] Under C.A.R. 3.4(j)(2) (2015), in effect at all relevant times during this appeal, "[a]fter reviewing the petition on appeal, any response, and the record, the Court of Appeals may . . . set the case for supplemental briefing on issues raised by the parties or noticed by the court."

the court terminated mother's parental rights, it did not have jurisdiction to do so.

### 1. Law

¶ 18    For a parent involved in a dependency or neglect proceeding, the entry of an adjudicatory order is a critically important turning point.  The purpose of the adjudicative process is to "determine whether the factual allegations in the dependency or neglect petition are supported by a preponderance of the evidence" such that the child's status "warrants intrusive protective or corrective state intervention into the familial relationship."  *People in Interest of J.G. v. M.L.*, 2016 CO 39, ¶ 18 (citations omitted).  Thus, if a parent admits the allegations in the petition in dependency or neglect — or if the state, in a contested case, proves the allegations — then the court may enter an adjudicatory order, which vests the court with "extensive and flexible dispositional remedies."  *People in Interest of A.M.D.*, 648 P.2d 625, 639-40 (Colo. 1982).

¶ 19    Alternatively, if the parent denies the allegations and the state fails to prove them, the court must order the petition dismissed and the child, as well as his or her parents, guardian, or legal custodian, discharged from any restrictions or temporary orders.

§ 19-3-505(6); *People in Interest of A.H.*, 271 P.3d 1116, 1121 (Colo. App. 2011).

¶ 20    Although the purpose of adjudication is to determine whether state intervention into the familial relationship is necessary to serve the best interests of the children, the determination must be made in a manner that protects parental rights. *J.G.*, ¶ 24. Recognizing "the bedrock principle" that the right to parent one's children is a fundamental liberty interest, our supreme court has held that intervention into that interest requires "fundamentally fair procedures." *Id.* at ¶ 20 (citation omitted).

¶ 21    Discovering what fundamental fairness consists of in a particular situation is often an "uncertain enterprise," but due process requires the court to make the inquiry. *A.M. v. A.C.*, 2013 CO 16, ¶ 28 (citation omitted). Ensuring a fair procedure at the adjudicatory stage is critical because "termination is impossible absent the preliminary determination that the child is dependent and neglected." *Id.* at ¶ 29.

¶ 22    The importance of the adjudicatory stage is reflected in the fact that a parent has a statutory right to a jury trial on the allegations set forth in the petition in dependency or neglect.

§ 19-3-202, C.R.S. 2015; *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). The parent may elect to waive his or her right to a jury trial and may confess, stipulate, or elect not to contest part or all of the allegations in a dependency or neglect petition. If a parent admits part or all of the allegations in the petition, "the court may accept the admission after finding that (1) the parent understands his or her rights, the allegations contained in the petition, and the effect of the admission; and (2) the admission is voluntary." *N.D.V.*, 224 P.3d at 417 (citing C.R.J.P. 4.2(c)). If the court accepts the parent's admission, the state is relieved from the burden of proving such admitted allegations at the adjudicatory hearing. C.R.J.P. 4.2(c); *A.M.*, 786 P.2d at 479. But the statute does not provide any short cuts. The court must take the next step after accepting an admission — namely, it must adjudicate the child dependent or neglected. § 19-3-505(7)(a).

¶ 23     Indeed, in order to terminate parental rights in a dependency or neglect proceeding, the court must first find that the child who is the subject of the proceeding "has been adjudicated dependent or neglected." § 19-3-604(1)(a), (b), (c). Without an adjudication, a court does not acquire subject matter jurisdiction to terminate a

11

parent-child relationship.  *See A.M.D.*, 648 P.2d at 639-40; *N.D.V.*, 224 P.3d at 421 (Lichtenstein, J., dissenting).  This is because the General Assembly's statutory grant of subject matter jurisdiction is limited until the adjudication order has been entered.  *N.D.V.*, 224 P.3d at 421 (Lichtenstein, J., dissenting).  Stated differently, while the General Assembly has provided jurisdiction "[t]o terminate the legal parent-child relationship," § 19-1-104(1)(d), "this statutory provision presupposes an adjudication of the child as dependent or neglected."  *N.D.V.*, 224 P.3d at 423 (Lichtenstein, J., dissenting); *see also A.M.D.*, 648 P.2d at 639-40.

### 2.  Application

¶ 24    In this case, an adjudicatory trial was held in July 2014.  At the conclusion of the trial, the jury found in mother's favor on one of the questions presented to it and was unable to reach a verdict on the other question.  During a subsequent hearing, mother's attorney informed the court that he and mother had discussed further proceedings with the county attorney, and mother "seem[ed] to be receptive to admitting" the remaining allegation against her at that point.  He noted, however, that mother wanted very much to file an administrative challenge to the allegations of child abuse

found in the state's child abuse database because, as a teacher, she did not want to have a child abuse report on her record. He explained that she was concerned about the possibility that entering an admission to the petition in dependency or neglect would affect the administrative appeal. The attorney admitted that he did not know the answers to mother's questions, and so he had not advised her one way or the other.

¶ 25 The trial court then questioned mother about her understanding of the proceedings and her desire to enter an admission that the children were in an injurious environment. Mother told the court that she wanted to enter an admission because she "want[ed] to get [her] kids back the speediest way" she could, and it would take time for a new trial.

¶ 26 The trial court then ruled as follows: "All right, then, I'm willing to prepare – I'll make [sic] the admission that the mother's entered the admission that the child – children's environment is injurious."

¶ 27 Significantly, the court did not state at any time during the July 14 hearing — or at any other time prior to the termination order — that it was adjudicating the children dependent or

neglected with respect to mother. § 19-3-505(7)(a). And that the written order entered on October 30, 2015, states that the order was "entered and effective on this 14th day of July, 2014," does not change the fact that the court actually did not enter an adjudicatory order on July 14, 2014.

¶ 28    The department and the guardian ad litem (GAL) rely on *N.D.V.* for the proposition that formal adjudication prior to termination is not required. In *N.D.V.*, a division of this court ruled that a juvenile court's subject matter jurisdiction in dependency or neglect cases is based on the *fact* of the child being dependent or neglected. 224 P.3d at 414. The division concluded that if a parent admits that fact, the court's acceptance of the admission establishes "the essential factual predicate for the court's exercise of its jurisdiction" and the court's subsequent failure to enter a formal order sustaining the petition does not divest the court of jurisdiction. *Id.*

¶ 29    The *N.D.V.* majority thus treated the mother's admission, together with the court's acceptance of her admission, as sufficient to invoke the court's continuing jurisdiction to terminate parental rights. The department and GAL ask us to adopt the reasoning of

the majority in *N.D.V.*  We decline to do so.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 11 n.1 ("One division [of the court] is not bound by the holding of another division.").

¶ 30    Instead, we agree with Judge Lichtenstein's thoughtful dissent in *N.D.V.*, specifically that continuing jurisdiction, which a court must have to enter any orders other than temporary orders, does not exist unless an adjudication order has been entered.  224 P.3d at 425 ("A child's status as dependent or neglected is determined only by the entry of an order of adjudication."); *see* § 19-3-505(7)(a) (stating that when the court finds that the allegations of the petition are supported by a preponderance of the evidence, except when the case is continued as provided in section 19-3-505(5), the court "shall sustain the petition" and "shall make an order of adjudication" setting forth whether the child is neglected or dependent); *see also* § 19-3-205(1), C.R.S. 2015 (stating that once a child is adjudicated dependent or neglected, jurisdiction of the court continues until he becomes twenty-one or jurisdiction is terminated by court order).

¶ 31    In her dissent, Judge Lichtenstein concluded that when a parent enters an admission in order to obtain a deferred

adjudication, the admission is "conditional" as it is based upon statutory provisions that do not permit the court to continue the case beyond one year unless the court enters an adjudication sustaining the petition. *N.D.V.*, 224 P.3d at 424. She further concluded that such an admission only authorizes the court's temporary intervention in the case pending a dependency or neglect adjudication; thus, even after entering an admission, a parent has the right to have an adjudication made either dismissing or sustaining the petition. *Id.* (citing section 19-3-505(5)(b)).

¶ 32 Here, mother was not offered a deferred adjudication, nor did she request one. Nevertheless, we find Judge Lichtenstein's analysis persuasive. Assuming, without deciding, that mother's admission and the court's acceptance of it were sufficient to establish a factual basis for the adjudication of the children as dependent or neglected children,[4] we nevertheless conclude that the

---

[4] Under C.R.J.P. 4.2(c), the court may accept a parent's admission after finding, among other things, that the parent understands the effect of his or her admission. Here, mother's attorney candidly told the court that he was unable to answer some questions that mother had asked about the effect of making an admission. Although the court questioned mother generally about her understanding of the proceedings, and offered to give her time to think about what she should do, the court did not specifically question her about her

admission and the court's acceptance of it did *not* satisfy section 19-3-505(7)(a), which provides that "the court *shall* sustain the petition and *shall* make an order of adjudication" if the court finds that the allegations of the petition are supported by a preponderance of the evidence. (Emphasis added.) Because the court did not enter an order of adjudication, we conclude that mother's admission only authorized the court to continue its temporary intervention in the case pending an adjudication. In effect, adjudication was deferred. And, because an adjudication is a prerequisite to termination under section 19-3-604(1)(c), the trial court lacked jurisdiction to enter the order terminating mother's parental rights. Given the enormous consequences at stake, we conclude that this is the fairest procedure and the one that most comports with legislative intent.

---

understanding of the effect of making an admission. Nor did the court make a finding as to whether she understood the effect of making an admission. On this record, we cannot determine whether mother understood the effect of her admission when she made it; thus, we cannot determine whether the court could properly accept her admission. Instead, we assume that mother's admission is valid but have concerns based on statements made by her counsel at the July 14, 2014, hearing and at oral argument before us concerning the sufficiency of his advice to her and her understanding of the implications of her admission. *See People in Interest of C.H.*, 166 P.3d 288, 290 (Colo. App. 2007).

17

## B.  The Adjudicatory Order

¶ 33     Turning to the October 30, 2015, written adjudicatory order, we note that it was entered several weeks *after* mother filed her notice of appeal.  "Unless otherwise authorized by statute or rule, the filing of a notice of appeal shifts jurisdiction to the appellate court and divests the trial court of jurisdiction to conduct further substantive action related to the judgment on appeal." *People in Interest of K.A.,* 155 P.3d 558, 561 (Colo. App. 2006) (citing *Musick v. Woznicki,* 136 P.3d 244, 246 (Colo. 2006)).  Here, mother is appealing the adjudicatory order; accordingly, we conclude that the trial court did not have jurisdiction to take any action regarding it after mother's notice of appeal shifted jurisdiction to this court.

## IV.  Mother's Issues

¶ 34     All of mother's contentions concern issues that arose at or after the adjudicatory stage of the proceeding.  Because we have concluded that the trial court did not adjudicate the children dependent or neglected with respect to mother and, thus, did not have jurisdiction to proceed beyond the adjudicatory stage, we conclude that the issues raised by mother in her original petition on appeal are moot.

18

## V. Conclusion

¶ 35 The order adjudicating the children dependent or neglected with respect to mother and the judgment terminating her parental rights with respect to the children are vacated. On remand, the court shall resume proceedings at the adjudicatory stage.

JUDGE HARRIS concurs.

JUDGE HAWTHORNE concurs in part and dissents in part.

JUDGE HAWTHORNE concurring in part and dissenting in part.

¶ 36 In my view, section 19-1-104(1)(b) and (d), C.R.S. 2015, grants the juvenile court exclusive original subject matter jurisdiction in proceedings (1) concerning any child who is dependent or neglected and (2) terminating the legal parent-child relationship. And I conclude that the failure to enter an adjudication order in dependency or neglect actions does not divest the juvenile court of its subject matter jurisdiction to order a termination of the parent-child relationship under section 19-3-604(1)(c), C.R.S. 2015. So, I respectfully dissent from Part III.A of the majority opinion, which vacates the court's judgment terminating mother's parent-child legal relationship with the children and remands to the court to resume proceedings at the adjudicatory stage; from Part IV, which concludes that the issues raised by mother are moot; and from the conclusion in Part V. Otherwise, I concur with Parts I, II, and III.B.

## I. Jurisdiction

¶ 37 The majority opinion in *People in Interest of N.D.V.* concluded that

> when, as here, a court accepts a parent's admission that the child is neglected or dependent, the child's status is established and the court has jurisdiction to conduct further proceedings. If, thereafter, the court fails to enter an adjudicatory order so reflecting as statutorily required, the court does not lose jurisdiction in the matter.

224 P.3d 410, 418 (Colo. App. 2009) (*cert. denied* Feb. 22, 2010). I agree. Paraphrasing or reformulating the majority opinion's analysis could disserve the author and would needlessly lengthen this opinion. So, I adopt *N.D.V.*'s analysis here and conclude that any error in conducting the termination hearing and entering an order terminating mother's parent-child relationship with the children, without first entering an adjudication order, would have been procedural, not jurisdictional. And because mother did not raise the issue in the trial court, she has waived it. To the extent mother argues that section 19-3-505(5) or (7), C.R.S. 2015, establishes a procedural prerequisite to conducting the termination hearing or entering a termination order, I conclude that she has also waived this issue.

¶ 38    To insist that the trial court comply with a procedural rule, a party must object to the court's noncompliance in a timely manner

21

or the noncompliance may be waived. *N.D.V.*, 224 P.3d at 417 (holding that because mother did not raise in trial court issue of error in conducting termination hearing without first entering an adjudicatory order, she had waived it); *see People in Interest of E.H.*, 837 P.2d 284, 290 (Colo. App. 1992) (stating that the right to insist on compliance with procedural rules must be timely exercised or the noncompliance may be waived); *People in Interest of T.S.*, 781 P.2d 130, 132 (Colo. App. 1989) (explaining that because mother failed to object on grounds asserted on appeal, she was deemed to have waived any objection and could not raise it on appeal); *see also People in Interest of Z.P.*, 167 P.3d 211, 213 (Colo. App. 2007) (father waived right to counsel by failing to make a timely request). I conclude that mother waived her right to challenge this procedural requirement on appeal because she never raised this issue before the trial court.[1]

¶ 39    After the first trial, mother admitted the allegations of the amended petition, and the court accepted her admission. She never sought to withdraw her admission and never challenged the trial

---

[1] Throughout the adjudication, disposition, and termination proceedings, mother was represented by counsel.

court's subsequent orders on jurisdictional grounds. After mother's admission, but before the termination hearing, mother participated in additional hearings before the trial court. At no point did mother assert that prior to conducting those hearings the trial court was required to dismiss or sustain the petition. *See* § 19-3-505(6)-(7)(a).

¶ 40 During the two-day termination hearing mother did not demand that the court enter an adjudication order before conducting further proceedings. And she did not raise this objection when the court issued its oral termination order in which the court found that the children had been adjudicated dependent and neglected. Nor did she object to the court's later written termination order finding that "the children have been adjudicated dependent and neglected." By her inaction, and under these circumstances, mother has waived her right to object to any procedural error arising from the court conducting the termination hearing without first entering an adjudication order.

¶ 41 Mother does not contend on appeal that the court erred by accepting her admission or assert that the children were not dependent or neglected throughout the proceedings. Nor has she presented any basis on which the court could have properly

dismissed the petition or concluded that the children were not dependent or neglected. Accordingly, I would not disturb the trial court's judgment on procedural grounds.

## II. Mother's Other Issues

¶ 42    Because I reject mother's jurisdictional claim, I respectfully disagree that the other issues raised in mother's petition on appeal are moot. So, I consider and reject each in turn.

### A. Effect of Jury's Inability to Determine Whether Children's Environment was Injurious

¶ 43    Mother contends that the trial court erred by refusing to return the children to her physical custody after the jury in the first trial rendered a verdict that the children's environment was not injurious to their welfare.

¶ 44    I reject this argument because the record belies mother's assertion. The jury did not find that the children's environment was not injurious to their welfare; it declared that it was unable to determine whether the environment was injurious.

### B. Treatment Plan's Appropriateness

¶ 45    Mother contends that decisions made by the trial court rendered her treatment plan inappropriate. First, she contends

that the court erred when it failed to order a substitute family therapist when problems arose in her relationship with the therapist. Second, she contends that the court erred when it reduced her visits with the children. I do not agree that these decisions rendered the treatment plan inappropriate.

¶ 46 An appropriate treatment plan is one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." § 19-1-103(10), C.R.S. 2015. A successful treatment plan renders the parent fit. *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006). A treatment plan is not necessarily inappropriate because it was not successful. In many cases it is virtually impossible to devise a plan which will guarantee success. *People in Interest of M.M.*, 726 P.2d 1108, 1121-22 (Colo. 1986).

### 1. Maintaining Family Therapist

¶ 47 The termination trial record shows that a therapist was retained to provide therapeutic visitation services to mother and the children. From the beginning, there were problems between mother and the therapist. The therapist reported that mother was very defensive in her parenting and she had difficulty accepting the

25

therapist's intervention.  Mother testified that she had a hard time understanding the family therapist because the therapist was "too abstract."

¶ 48    Mother had requested several times that the therapist be replaced because she did not believe the therapist was helpful.  Her individual therapist noted that mother did not feel "emotionally safe" with the family therapist.  But, the Clear Creek County Department of Human Services (CCCDHS) case supervisor testified that changing to a new family therapist was never seriously considered because the children were comfortable with the therapist and a change would have been disruptive for them; the therapist was regarded as "one of the best" at providing therapeutic visits; and, in the supervisor's view, mother's problem was that she did not agree with the feedback from the therapist.

¶ 49    The witnesses' credibility and the evidence's sufficiency, probative effect, and weight, as well as the inferences and conclusions to be drawn from it, are within the trial court's discretion.  *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982).  A trial court's findings and conclusions will not be disturbed on review unless they are so clearly erroneous as to find no record

26

support. *Id.* The evidence was conflicting as to whether the family therapist was helpful to mother. Even so, the trial court found that mother's treatment plan was appropriate. I infer from this finding that the trial court determined that the difficulties between the therapist and mother were insufficient to render the treatment plan inappropriate. Because the evidence supports this conclusion, I would not disturb it. *See id.*

### 2. Reducing Weekly Visits

¶ 50    Mother also contends that the trial court erred, and rendered the treatment plan inappropriate, by reducing visitation between her and the children. Again, I disagree.

¶ 51    Visitation services are to be provided to parents "as determined necessary and appropriate by individual case plans." § 19-3-208(2)(b)(IV), C.R.S. 2015.

¶ 52    When deciding whether visitation services should be provided, the court must bear in mind that a treatment plan's purpose is to preserve the parent-child relationship by assisting the parent in overcoming the problems that required intervention into the family. *People in Interest of D.G.*, 140 P.3d 299, 304 (Colo. App. 2006). But, the child's health and safety remain the "paramount concern" when

determining whether visitation should be offered as part of the efforts to reunite the family. § 19-1-103(89).

¶ 53     Questions concerning children's health and safety are matters entrusted to the trial court's sound discretion. *People in Interest of B.C.*, 122 P.3d 1067, 1070 (Colo. App. 2005). After more than a year of therapeutic visitation, CCCDHS requested that the visitation plan be modified. It alleged that the family therapist, J.W.'s individual therapist, and mother's individual therapist had raised concerns that having visits twice a week was detrimental to both mother and the children. Reports from all three therapists described their concerns about mother's and the children's emotional condition during and after visits.

¶ 54     Following a hearing, the court reduced visits to once per week, citing testimony by the family therapist and J.W.'s therapist that the children were in a state of "hyper arousal" after visits with mother, and such a state was not healthy for them.

¶ 55     The trial court did not abuse its discretion in reducing visitation because evidence indicated that visitation twice a week was emotionally harmful to the children, and I conclude that the reduction did not render mother's treatment plan inappropriate.

## C. Adequacy of Factual Findings

¶ 56　Mother contends that the termination order is inadequate because the court "fail[ed] to make appropriate factual findings or to identify the deficiencies which rendered termination constitutionally appropriate." I disagree.

¶ 57　Under section 19-3-604(1)(c), the parent-child legal relationship may be terminated if the court finds:

- that the child has been adjudicated dependent or neglected, and the court finds based on clear and convincing evidence that the parent did not reasonably comply with a treatment plan approved by the court or that the treatment plan has been unsuccessful;

- that the parent is unfit; and

- that the parent's conduct or condition is unlikely to change within a reasonable time.

The trial court found by clear and convincing evidence:

- the children had been adjudicated dependent and neglected as to mother;

- the court had adopted an appropriate treatment plan and that plan had not been complied with or had not been successful;

- mother was unfit;

- reasonable efforts had been made to rehabilitate her, but they had been unsuccessful; and

- her condition was unlikely to change within a reasonable time.

¶ 58    The court also made detailed and extensive findings as to the specific reasons why it concluded that mother's parental rights should be terminated.  Citing a report prepared by the family therapist and the testimony of the psychologist who evaluated mother, the court noted that mother had a history of trauma and mental health problems that interfered with her ability to meet her children's needs.

¶ 59    I conclude that the trial court's findings show that the court considered each factor in section 19-3-604(1)(c) and also identified the specific deficiencies leading the court to terminate mother's parental rights.

## III.    Conclusion

¶ 60    I would affirm the trial court's judgment terminating the parent-child legal relationship between mother and the children.