The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 28, 2022

## 2022COA88

**No. 21CA1331, *People in Interest of T.W.* — Juvenile Court — Subject Matter Jurisdiction — Authority to Act — Dependency and Neglect — Deferred Adjudication — Allocation of Parental Responsibilities**

For the first time since the supreme court's decision in *People in Interest of J.W. v. C.O.*, 2017 CO 105, a division of the court of appeals is required to decide whether a juvenile court is able to enter an order allocating parental responsibilities under a deferred adjudication of dependency or neglect. The division concludes that a juvenile court has continuing subject matter jurisdiction in a dependency or neglect action after the entry of a deferred adjudication. However, the division holds that a juvenile court lacks the legal authority to enter an order for the allocation of parental responsibilities unless the child has been formally adjudicated dependent or neglected or the court has accepted an

admission from the parents that the child should be adjudicated dependent or neglected.

COLORADO COURT OF APPEALS                               **2022COA88**

Court of Appeals No. 21CA1331
Morgan County District Court No. 20JV26
Honorable Kevin L. Hoyer, Judge

The People of the State of Colorado,

Petitioner,

In the Interest of T.W., a Child,

and Concerning A.M.E.,

Appellant,

And G.U.,

Appellee.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE SCHUTZ
Dailey and Fox, JJ., concur

Announced July 28, 2022

Josi McCauley, Guardian Ad Litem

The Law Office of Michael Kovaka, Michael Kovaka, Littleton, Colorado, for
Appellant

Bergner Law Office, Stephanie Bergner, Leif Ericson, Carbondale, Colorado, for
Appellee

¶ 1     In this dependency and neglect proceeding, A.M.E. (mother) appeals the juvenile court's judgment allocating parental responsibilities for her child, T.W., to G.U. (father).  To resolve mother's appeal, we must decide whether a juvenile court may permanently allocate parental responsibilities when the parties are proceeding under a deferred adjudication.  Because we conclude a juvenile court lacks the legal authority to enter such an order when the child has not been adjudicated dependent or neglected, we vacate the judgment.

## I.  Procedural History

¶ 2     In June 2020, the Morgan County Department of Human Services initiated a dependency and neglect proceeding based on concerns that the then-ten-year-old child was being mistreated while in the care of mother and her husband.  The child's father, who lives in California, had not seen the child in approximately eight years at the time the case was filed.

¶ 3     The juvenile court placed the child in the care of his maternal cousins.  The child's younger half-siblings remained in the custody of mother and husband.  In September 2020, the court accepted the parties' stipulation continuing the child's adjudication and

1

entered an order deferring the issue of whether the child should be adjudicated dependent or neglected for six months under section 19-3-505(5), C.R.S. 2021. The court also adopted treatment plans for each parent.

¶ 4　　In the stipulation, the parties set forth their understanding of how the case would proceed. It provided:

> For purposes of this Continued Adjudication only, and no other purpose, [mother and father] knowingly and voluntarily admit the child is a dependent or neglected child because he was in an injurious environment. Respondents also admit the jurisdictional allegations of the Petition. This is a no fault admission and continued adjudication as to . . . mother . . . .

Based upon this limited admission, the parties agreed the court had continuing jurisdiction to enter temporary placement orders for the child. But they also expressly agreed that the child was not being adjudicated dependent or neglected with respect to either parent. Instead, they agreed that any trial related to whether the child should be adjudicated dependent or neglected would be continued — or deferred — for six months.

¶ 5　　In February 2021, father filed a motion seeking an allocation of parental responsibilities (APR) for the child to him. Mother filed a

2

written objection to father's APR motion, asserting that father was not an appropriate placement because he had minimal physical contact and no emotional bond with the child. Mother requested the child be placed with her. Soon after, the Department filed a motion asking the court to adopt its recommended permanency plan, adjudicate the child dependent or neglected, and grant an APR to father.

¶ 6 The court adopted the Department's proposed permanency plan, which set the permanent goal as placement of the child with father in California but with temporary placement remaining with the child's cousins while a relationship was established between the child and father. The court did not address the Department's request for an adjudicatory order. Instead, without objection from the parties, it continued the deferred adjudication for another six months. It also set a hearing on father's request for an APR.

¶ 7 The juvenile court held an evidentiary hearing on father's APR motion in June 2021. The court then temporarily placed the child in father's custody and authorized video visits with mother. After a review hearing a couple of months later, the court entered an APR order that kept the child in father's custody, authorized parenting

time for mother, and awarded decision-making authority between the parents. The court then certified the APR order into a separate domestic relations case and closed the dependency and neglect case.

## II. Allocation of Parental Responsibilities

¶ 8 Mother contends the juvenile court lacked subject matter jurisdiction to grant the APR because it had not adjudicated the child dependent or neglected. We conclude the court had continuing subject matter jurisdiction over the parties and the case but did not have the legal authority to enter a permanent APR order for the child. We therefore vacate the juvenile court's order allocating parental responsibilities for the child.

### A. The Legal Framework

¶ 9 Dependency and neglect cases spring from foundational human bonds. There is no relationship more integral to a society than that of the family. And central to that institution is the relationship between parents and their children. The Supreme Court has observed that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel*

4

*v. Granville*, 530 U.S. 57, 65 (2000). Thus, in the first instance, it is parents, and not the State, who have the privilege and responsibility of raising their children.

¶ 10 Though parents' liberty interests in raising their children are firmly protected by the Constitution, the parents' rights are not unlimited. With rights come responsibilities. And one of the essential responsibilities that accompanies the privilege of parenting is the obligation to provide children with a safe and nurturing home free of neglect and abuse. If a parent fails to fulfill that responsibility, they are deemed "unfit" to autonomously make decisions for their children. While the parent remains unfit, the State has a vested interest in protecting the subject children, and may intervene in the parent-child relationship to protect them. *People in Interest of N.G.*, 2012 COA 131, ¶ 30.

¶ 11 These legal principles accommodate the tension between parents' right to freely parent their children and the government's corresponding obligation, as *parens patriae*,[1] to ensure that

---

[1] *Parens patriae* literally translates to "parent of his or her country" and refers to "the state in its capacity as provider of protection to those unable to care for themselves." Black's Law Dictionary 1339 (11th ed. 2019).

children grow and develop in a safe and nurturing environment. So how is this delicate, but essential, balance implemented?

¶ 12    In Colorado, the answer to that question starts with article 3 of the Children's Code, which provides the legal authorization for dependency and neglect cases. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 26. To invoke the court's jurisdiction, the petition must allege facts establishing that the child is dependent or neglected under section 19-3-502, C.R.S. 2021. *C.O.*, ¶ 26. The Children's Code also grants the juvenile court the authority to enter immediate emergency temporary orders to protect the health and welfare of the child, including the possibility of removing the child from the existing home if continuing the child's current care and custody "would present a danger to that child's life or health in the reasonably foreseeable future." § 19-3-405(2)(a), C.R.S. 2021.

¶ 13    These extraordinary powers are necessary to protect children who are at risk of immediate harm because of their environment. But they also represent an extraordinary intrusion into the fabric of the family, including the parents' constitutionally grounded right to raise their children as they deem appropriate.

6

¶ 14    Recognizing the need to balance these rights, the Children's Code requires the State to promptly provide parents with notice and an opportunity to be heard by the juvenile court concerning the issues presented in a petition.  §§ 19-3-202, 19-3-503, C.R.S. 2021; *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 9.

¶ 15    After being advised of their legal rights, the parents must decide whether they wish to contest or admit the allegations of the petition.  If the parents decide to waive their right to an adjudicatory trial and admit the allegations, then a formal adjudication of the child as dependent or neglected may be entered. § 19-3-505(1), (7)(a); C.R.J.P. 4.2(b); *see also N.G.*, ¶¶ 19-20.  If either parent contests the petition, the matter must be set for an adjudicatory trial, either to a judge or jury.  At trial, the judge or jury decides if the State has sustained its burden of proving, by a preponderance of the evidence, the allegations in the petition.  If the fact finder concludes the State has met its burden, then a formal order enters adjudicating the child dependent or neglected.  If the fact finder concludes the State has not met its burden, then the court must dismiss the case.

¶ 16   Thus, at the adjudicatory phase a child is generally

adjudicated dependent or neglected, or the case is closed.  But

given the extraordinary consequences associated with an

adjudication, coupled with the varied circumstances in which these

cases arise, the Children's Code affords a third option.  Section 19-

3-505(5) provides as follows:

> After making a finding as provided by
> paragraph (a) of subsection (7) of this section
> but before making an adjudication, the court
> may continue the hearing from time to time,
> allowing the child to remain in his own home
> or in the temporary custody of another person
> or agency subject to such conditions of
> conduct and of visitation or supervision by a
> juvenile probation officer as the court may
> prescribe . . . .

Section 19-3-505(7)(a), in turn, provides:

> When the court finds that the allegations of
> the petition are supported by a preponderance
> of the evidence, except when the case is
> continued as provided in the introductory
> portion to subsection (5) of this section, the
> court shall sustain the petition and shall make
> an order of adjudication setting forth whether
> the child is neglected or dependent.

¶ 17   Based upon these provisions, after finding the allegations in

the petition are supported by competent evidence but before making

an adjudication of the child, the court may continue the

8

adjudicatory hearing. The parties must consent to the continuance, and if they do, the initial continuation shall not exceed six months. § 19-3-505(5)(a)-(b). Following the initial six-month period, the court may continue the hearing for another six months, after which it must dismiss or sustain the petition. § 19-3-505(5)(b).

¶ 18 The decision to continue or "defer" an adjudication has benefits for all parties. The State is initially freed of the obligation to meet its burden of proof on the adjudicatory question at trial, with its corresponding expense, delay, and conflict. The parents receive the same benefits, together with the opportunity to constructively address the issues that gave rise to the petition without the adverse consequences of a formal adjudication on their record. And the child benefits from the court's continued involvement in the case, with its corresponding authority to enter orders for the temporary placement and protection of the child.

¶ 19 It is this third option — to defer the question of whether the child should be adjudicated dependent or neglected — that the parties utilized in this case. Based upon the parties' stipulation, the court deferred the adjudication and entered temporary orders for the placement of the child with mother's cousins. The court also

adopted treatment plans designed to allow the parents to address the issues giving rise to the filing of the petition. And the court developed a visitation plan designed to allow father to establish a bonded relationship with the child.

¶ 20 No party contests the juvenile court's full authority to enter these temporary orders. The conflict between the parties instead relates to whether the juvenile court had the legal authority, prior to an adjudication of the child as dependent or neglected, to enter a permanent order allocating parental responsibilities to father.

¶ 21 To answer the question presented, we must consider the legal parameters of a juvenile court's subject matter jurisdiction and jurisdiction over the child, and its corresponding authority to enter permanent orders allocating parental responsibilities.

### B. Preservation of the Issue

¶ 22 At the hearing on father's APR motion, mother did not expressly contest the court's jurisdiction to allocate parental responsibilities without first adjudicating the child dependent or neglected. But mother's counsel did assert in his opening statement and in his closing argument that the APR motion was "premature" because three months remained on the deferred

adjudication at the time of the hearing. Moreover, mother did not consent, explicitly or implicitly, to the juvenile court allocating parental responsibilities. And, as discussed more fully below, the question of a court's jurisdiction or authority to enter an order allocating parental responsibilities absent an adjudication is the subject of evolving precedent. In light of these circumstances, we conclude mother has not waived her right to challenge the court's jurisdiction or authority to enter the order allocating parental responsibilities.

¶ 23 Moreover, the issue of subject matter jurisdiction is an issue that the parties cannot waive. *See, e.g.*, *People v. Sprinkle*, 2021 CO 60, ¶ 17 ("[S]ubject matter jurisdiction cannot be waived or consented to by the parties . . . ."). Thus, to the extent that the APR order implicates the juvenile court's subject matter jurisdiction, it was not possible for mother to waive the issue.

¶ 24 Finally, to the extent that an argument could be made that mother did not adequately preserve the issue, we exercise our discretion to address it to avoid a miscarriage of justice. *See, e.g.*, *People in Interest of E.S.*, 2021 COA 79, ¶ 14 (applying miscarriage of justice doctrine in a dependency and neglect case); *People in*

*Interest of M.B.*, 2020 COA 13, ¶ 21 (discussing the limited scope of the miscarriage of justice exception but applying it in a dependency and neglect case to address unpreserved error "given the constitutional nature of parental rights").

### C.    Jurisdictional Provisions and Standard of Review

¶ 25    A juvenile court's jurisdiction concerns its authority to hear and determine a matter.  *C.O.*, ¶ 21.  A court's jurisdiction generally consists of two parts — subject matter jurisdiction over the issue to be decided and personal jurisdiction over the parties.  *Id.* at ¶ 22.  A judgment rendered without jurisdiction is void and may be attacked directly or collaterally.  *Id.* at ¶ 21.

¶ 26    When the facts are undisputed, the scope of a court's jurisdiction presents questions of law that we review de novo.  *Id.* at ¶ 17; *Giduck v. Niblett*, 2014 COA 86, ¶ 11.

### D.    Subject Matter Jurisdiction

¶ 27    Subject matter jurisdiction concerns the court's authority to deal with a class of cases, not its authority to enter a particular judgment within a case that falls within that broad class.  *C.O.*, ¶ 24.  Because subject matter jurisdiction, in its broadest sense, concerns only the class of cases that a court may adjudicate, a

court that has already obtained jurisdiction is not divested of its subject matter jurisdiction by a later failure to follow statutory requirements. *Id.*

¶ 28 The constitution and the laws of the state confer subject matter jurisdiction. *People in Interest of K.W.*, 2012 COA 151, ¶ 10; *see also Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 20. The Children's Code grants a juvenile court exclusive original jurisdiction over proceedings concerning any child who is alleged to be dependent or neglected.

¶ 29 Because this proceeding fell within the class of cases that a juvenile court may hear under these provisions, the juvenile court had and retained broad subject matter jurisdiction during the entirety of this case. *See C.O.*, ¶ 25. But we must also consider whether the juvenile court had jurisdiction over the child, and thus the legal authority, to enter the permanent APR order before the child had been adjudicated dependent or neglected with respect to either parent. *See id.*

E.    Personal Jurisdiction

¶ 30 Personal jurisdiction refers to the court's authority to enter orders that bind particular persons. Without personal jurisdiction

over a person, the court lacks the legal authority to enter an order that directly impacts that person. Unlike subject matter jurisdiction, parties may consent to the court's exercise of personal jurisdiction so far as it affects them personally. *See, e.g.*, *Clinic Masters, Inc. v. Dist. Ct.*, 192 Colo. 120, 123, 556 P.2d 473, 475 (1976). And once personal jurisdiction is acquired over a party, whether by consent or through service of process, the court retains jurisdiction over that party for the duration of the case.

¶ 31     In recent case law, the Colorado Supreme Court has referred to the concept of "jurisdiction over the child" when addressing a juvenile court's authority to enter orders in the absence of an order adjudicating a child dependent or neglected. *See, e.g.*, *C.O.*, ¶ 31 ("[T]he child's status as dependent or neglected establishes the court's continued jurisdiction over the child and permits state intervention into the familial relationship to protect the child and to provide rehabilitative services to assist the parent and child in establishing a relationship and home environment that will preserve the family unit."); *People in Interest of S.A.*, 2022 CO 27, ¶¶ 29-30 (noting that "[w]ithout personal jurisdiction over an individual, a court is powerless and cannot issue legally binding and enforceable

14

orders" and holding that the "court's personal jurisdiction over [p]arents and subject matter jurisdiction over [the child]'s dependency or neglect case" did not permit the juvenile court to enter orders that impacted siblings who had not been adjudicated dependent or neglected).

¶ 32     Traditional concepts related to the exercise of personal jurisdiction in the dependency or neglect arena have inherent limitations.  For example, the dependent or neglected child is typically a juvenile, and not in a position to consent to jurisdiction or subject to service of process.  Moreover, even if a child could consent to personal jurisdiction, orders in a dependency and neglect case not only affect the rights of the child; they also implicate fundamental constitutional rights of a parent.  Thus, it would not be possible for the child, or a representative, to consent to the exercise of personal jurisdiction and thereby agree to the court's authority to enter final orders that compromise a parent's fundamental right to autonomously parent their child unless that child has been adjudicated dependent or neglected.  *See S.A.*, ¶ 29 ("[T]he court never found — by a preponderance of the evidence or otherwise — that S.A.'s siblings were dependent or neglected and

that the court's intervention was warranted. Without such a finding . . . the juvenile court . . . acted beyond the jurisdiction granted to it by statute.").

¶ 33 Perhaps for these reasons, even when discussing the court's jurisdiction over a child, the supreme court has framed its analysis in terms of the juvenile court's legal or statutory authority to enter orders that impact a child who has not been adjudicated dependent or neglected. *C.O.*, ¶ 25 ("[T]he question is whether the court had jurisdiction over the children when it terminated the parent-child legal relationship."); *id.* at ¶ 31 ("[T]he purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency or neglect petition are supported . . . [, and] the child's status as dependent or neglected establishes the court's continued jurisdiction over the child . . . ."); *see also S.A.*, ¶¶ 7, 29 (holding the juvenile court "had no authority" or jurisdiction to enter visitation orders impacting children who had not been adjudicated dependent or neglected). Thus, we turn to an analysis of the breadth and limitation of a juvenile court's authority to enter permanent orders, including an order allocating parental responsibilities, in dependency and neglect actions.

F.    The Juvenile Court's Authority to Act

¶ 34    Colorado's juvenile courts are created by statute, and thus they have no jurisdiction to act except as provided by statute. *Everett v. Barry*, 127 Colo. 34, 39, 252 P.2d 826, 829 (1953).  In addition to the limits of subject matter jurisdiction, a court's authority to take action within a particular case in which it enjoys subject matter jurisdiction may be constrained by statute, rule, or case law.  *Tulips*, ¶¶ 17-23 (discussing the distinctions between a court's subject matter jurisdiction and its authority to act and noting that "[a] court's authority to act derives from rule, statute, case law, or the inherent authority of courts").

¶ 35    At the commencement of a dependency and neglect case, the juvenile court's authority to act is limited.  The court has the authority to enter temporary orders to protect the children.  *People in Interest of M.C.S.*, 2014 COA 46, ¶ 8.  After a child is adjudicated dependent or neglected, the juvenile court has much broader authority to act, including the ability to enter dispositional remedies and permanent orders addressing custody of the child.  *People in Interest of A.M.D.*, 648 P.2d 625, 639 (Colo. 1982); *see also L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1392 (Colo. 1996).  But

17

the juvenile court does not have the authority to enter an order allocating parental responsibilities until after the parents are afforded full due process, which includes the right to test the merits of the petition at an adjudicatory trial. *S.A.*, ¶¶ 29-30; *N.G.*, ¶ 66.

¶ 36 *N.G.* involved a factual situation similar to that presented here. At the time the petition was filed, the child was in mother's custody. *N.G.*, ¶¶ 4, 5. Father lived in Arizona and had not seen the child for three years. *Id.* In response to the petition, mother admitted the child was dependent or neglected and the court entered an adjudication of the child with respect to her. Father, on the other hand, agreed to a deferred adjudication. *Id.* at ¶ 6. Similar to the agreement here, the father in *N.G.* admitted the allegations of the petition were supported by a preponderance of the evidence, thus confirming the juvenile court's continued authority to exercise jurisdiction over the parties and the child and its corresponding authority to enter temporary orders. *Id.* But, as here, the parties also agreed to defer the question of whether the child should be adjudicated dependent or neglected as to father. *Id.*

¶ 37 Disagreements arose between the parties concerning placement of the child with father. Father eventually filed a motion

to place the child with him.  *Id.* at ¶ 9.  The department then moved to revoke father's deferred adjudication and allocate parental rights for the child to a family member, which father contested.  *Id.* at ¶¶ 11, 13.  After a hearing, the juvenile court entered an order allocating parental responsibilities for the child to the family member.  The father appealed.

¶ 38    On appeal, a division of this court concluded the juvenile court erred by entering the APR order without having entered an order adjudicating the child dependent or neglected.  *Id.* at ¶ 2.  The division reasoned that because adjudication relates to the status of the child at the time of the order the adjudication is entered, by continuing the deferred adjudication the court was necessarily postponing a final decision on whether the child was dependent or neglected.  *Id.* at ¶ 25.  Thus, the limited admission made within the deferred adjudication to confirm the juvenile court's jurisdiction and continuing limited authority did not provide a sufficient foundation for a formal adjudication because father had not been afforded an opportunity to contest the adjudication.  *Id.* at ¶ 26.  Because the juvenile court had failed to provide an adjudicatory hearing or address father's motion for custody of the child before

making the permanent APR order, the division vacated that order. *Id.* at ¶ 67.

¶ 39    The Department acknowledges the import of *N.G.* but argues it is factually distinguishable from this case. Instead of viewing *N.G.* as controlling, the Department argues we should rely upon a prior opinion from a divided division of this court. *See People in Interest of N.D.V.*, 224 P.3d 410 (Colo. App. 2009). In *N.D.V.*, the majority concluded the juvenile court had the ability to terminate mother's parental rights, even though mother was on a deferred adjudication that had not been revoked, and thus, no formal adjudication had entered. *Id.* at 416. But like the division in *N.G.*, we find *N.D.V.* distinguishable.

¶ 40    In *N.D.V.*, although no formal adjudication had entered, the department had filed a motion for termination of parental rights in which it expressly alleged, albeit erroneously, that an order of adjudication had entered against mother. *Id.* The mother did not contest that allegation. *Id.* Nonetheless, after an initial trial the juvenile court denied the motion to terminate. *Id.* When the mother's failure to address her parental unfitness continued, the department filed a second motion to terminate her parental rights.

*Id.* The department again erroneously alleged that an adjudication order had previously entered against mother and once again mother did not contest that allegation. *Id.* After a second termination hearing, the juvenile court terminated mother's parental rights. *Id.*

¶ 41    In rejecting mother's argument that the juvenile court lacked the authority to enter the termination order, the court concluded that an adjudicatory order was not a jurisdictional prerequisite to the entry of the termination order. *Id.* at 417-18. Thus, the majority held that mother had waived any objection to the absence of a stand-alone order of adjudication. *Id.* at 418. Moreover, the majority noted that the termination statute expressly required the court to make a finding, by clear and convincing evidence, that "the child is adjudicated dependent or neglected." *Id.* at 416 (quoting 19-3-604(1)(c), C.R.S. 2021). Therefore, by entering an order for termination of parental rights, the majority concluded the juvenile court had either expressly or implicitly adjudicated the child as dependent or neglected. *Id.* The dissent, in contrast, concluded that a prior and independent order of adjudication was necessary before the court could even proceed with the termination hearing. *Id.* at 421 (Lichtenstein, J., dissenting). Because no such order had

21

entered, the dissent would have vacated the termination order for lack of subject matter jurisdiction. *Id.*

¶ 42 Like the division in *N.G.*, we view *N.D.V.* as factually and legally distinguishable and therefore not persuasive in this case. Here, unlike in *N.D.V.*, the Department had never alleged that there was a prior adjudication of the child as dependent or neglected. Instead, the Department filed a combined motion to revoke mother's deferred adjudication and allocate parental responsibilities in favor of father. Thus, mother was never placed on notice that the Department was asserting that an adjudication order had previously entered. Similarly, mother made no express or implied admission that an adjudicatory ordered had previously entered. Moreover, the juvenile court made no finding, expressly or by implication, that the child had been previously adjudicated dependent or neglected.

¶ 43 In this case, mother contested the APR to father. At the contested hearing, although she did not expressly dispute the court's jurisdiction to enter an APR, her counsel, in his opening statement, argued that

22

> we're asking the Court to deny the motion for allocation. We believe it's premature. We still have roughly three months left on a continued adjudication and we believe that it is most appropriate to allow that time period to elapse to allow for rebuilding of the relationship between [the child] and his mother.

Similarly, in his closing argument, her counsel argued that "[w]e are operating, as far as [mother] is concerned, under a continued adjudication. There are still three months left on that continued adjudication." Father's counsel acknowledged the same facts and legal circumstances in his closing argument. Thus, unlike the parent in *N.D.V.*, mother did not expressly or implicitly waive her right to contest the juvenile court's authority to enter an order of adjudication. For these reasons, we conclude the reasoning in *N.D.V.* is unpersuasive here.

¶ 44 This conclusion is consistent with the supreme court's decision in *C.O.*, 2017 CO 105. In that case, mother had initially contested the petition and invoked her right to an adjudicatory trial. *Id.* at ¶ 6. After an initial trial, the jury was deadlocked, so no adjudication entered. *Id.* Thereafter, rather than proceed with another trial, mother entered a verbal admission to the allegations of the petition and consented to the entry of an adjudicatory order.

23

*Id.* at ¶ 7.  Through an apparent misstep, the juvenile court failed to enter a formal written order of adjudication after accepting the admission.  *Id.* at ¶ 8.  Based upon her continued failure to address the issues giving rise to the filing of the petition, the department moved for termination, and after holding a trial the juvenile court entered an order terminating mother's parental rights.  *Id.* at ¶¶ 9-10.

¶ 45  On appeal mother attempted to challenge the juvenile court's termination order based upon the absence of a formal written order of adjudication.  *Id.* at ¶ 12.  A division of this court sided with mother, concluding that in the absence of a formal written order adjudicating the children dependent or neglected, the juvenile court lacked subject matter jurisdiction to enter an order terminating her parental rights.  *People in Interest of J.W.*, 2016 COA 125, *rev'd sub nom. People in Interest of J.W. v. C.O.*, 2017 CO 105.

¶ 46  The supreme court reversed, concluding the juvenile court was not divested of subject matter jurisdiction by virtue of its failure to reduce to writing its implicit or express verbal order adjudicating the children dependent or neglected based upon mother's express admission.  *C.O.*, ¶ 32.  Recognizing the juvenile court's continuing

subject matter jurisdiction, the supreme court then turned to the question of whether the juvenile court had "jurisdiction over the children when it terminated the parent-child legal relationship." *Id.* at ¶ 25. The supreme court noted "*jurisdiction* over a child rests solely on the factual *status* of the child as dependent or neglected, not the formal entry of an order of adjudication reflecting that status." *Id.* at ¶ 30.

¶ 47 In reaching the conclusion that mother's verbal admission that the children were dependent or neglected sufficed, the court explained,

> [T]he purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency or neglect petition are supported by a preponderance of the evidence. In turn, the child's status as dependent or neglected establishes the court's continued jurisdiction over the child and permits state intervention into the familial relationship to protect the child and to provide rehabilitative services to assist the parent and child in establishing a relationship and home environment that will preserve the family unit.
>
> Here, Mother entered an admission to the Department's allegation that the children were dependent or neglected due to an injurious environment. . . . In light of Mother's admission, the Department was relieved of the burden to prove the allegation by a

> preponderance of the evidence at an adjudicatory hearing and the purpose of the adjudicative process was met. The court's acceptance of Mother's admission established the status of the children as dependent or neglected and, thus, the court's continued jurisdiction over the children.

*Id.* at ¶¶ 31-32 (citations and footnote omitted).

¶ 48    In reaching these conclusions, the supreme court noted mother had not requested or entered into a deferred adjudication. *Id.* at ¶ 8. To the contrary, mother had admitted that the children were in an injurious environment rather than have a second jury decide the issue, and mother did so with the expectation that the children would be adjudicated dependent or neglected based upon her admission.

¶ 49    Here, by contrast, the parents admitted that the child was dependent or neglected based on an injurious environment "[f]or purposes of this [c]ontinued [a]djudication only, and for no other purpose." And the court accepted this admission "for purposes of this [c]ontinued [a]djudication," ruling "no decree of adjudication shall be entered at this time." Thus, mother made no admission, express or implied, that the child had been or should be adjudicated dependent or neglected. The absence of such

26

admissions distinguishes this case from *N.D.V.* and *C.O.* Because no such admission was made and no order of adjudication had entered against mother, we conclude the juvenile court lacked the legal authority to enter a permanent order allocating parental responsibilities.

G.    The Juvenile Court's Authority to Act Is Properly Before Us

¶ 50    Although the division in *N.G.* reached the same conclusion we do in this case, we recognize it noted the father in that case had expressly contested the juvenile court's authority to enter an APR order due to the absence of an adjudicatory order. Because the issue was preserved, the division concluded "the lack of [an adjudicatory order] ha[d] not been waived, assuming, without deciding, that it could be." *N.G.*, ¶ 47.

¶ 51    We also recognize that mother failed to specifically alert the juvenile court that it lacked the authority to enter an APR order in the absence of a prior adjudication. But, as previously noted, we may, in our discretion, address an unpreserved error in a dependency or neglect case to avoid a miscarriage of justice. *E.S.*, ¶ 14. The exercise of this discretion is especially appropriate in a case involving a record that does not clearly establish the essential

evidentiary basis for the rendition of a final judgment on substantial constitutional claims. *Id.*

¶ 52    Recall that in *C.O.*, the supreme court initially concluded the juvenile court retained subject matter jurisdiction notwithstanding "a later failure to follow statutory requirements." *C.O.*, ¶ 24. The supreme court then proceeded to analyze "whether the court had jurisdiction over the children" when it terminated mother's parental rights. *Id.* at ¶ 25. And it concluded that mother's admission to the adjudication of the children as dependent or neglected is what gave the juvenile court "continued jurisdiction over the children." *Id.* at ¶ 32; *see also S.A.*, ¶ 28 (concluding a "juvenile court has continuing jurisdiction only when a child is dependent or neglected"). Thus, whether the juvenile court's "continued jurisdiction" is grounded in broad notions of subject matter jurisdiction or the narrower concept of a court's authority to take certain actions in a particular class of cases, it is apparent that the supreme court views the factual status of a child as dependent or neglected as a jurisdictional prerequisite to the entry of permanent orders.

¶ 53    This conclusion is also supported by the statutory language granting juvenile courts the authority to enter an order allocating parental responsibilities when another custody case is not pending:

> Except as otherwise provided by law, the juvenile court has exclusive original jurisdiction in [certain proceedings concerning children]:
>
> . . . .
>
> When the juvenile court *maintains* jurisdiction in a case involving a child who is dependent or neglected and no child custody action or action for the allocation of parental responsibilities concerning the same child is pending in a district court in this state, upon the petition of a party to the dependency or neglect case, the juvenile court may enter an order allocating parental responsibilities and addressing parenting time and child support matters. . . .

§ 19-1-104(1), (6), C.R.S. 2021 (emphasis added).  The General Assembly's use of the word "maintain" in this jurisdictional grant is instructive.  To "maintain" means "to keep in an existing state (as of repair, efficiency, or validity)" or "to continue or persevere." Merriam-Webster Dictionary, https://perma.cc/JS26-9MEH.  Thus, in this context, the term "maintains" implies that the juvenile court had existing jurisdiction, and thereafter some event happened that allowed its jurisdiction to continue.

29

¶ 54 Given the analyses of *C.O.* and *S.A.*, coupled with the statutory structure of dependency and neglect cases, we conclude that an order of adjudication or the court's determination that the child's factual status is dependent or neglected[2] is a necessary step that grants a juvenile court continuing jurisdiction over the child, and thus the authority to enter an APR order under section 19-1-104(6). Although the court retained broad subject matter jurisdiction over the case, absent an adjudication or a determination that the child's factual status is dependent or neglected, we conclude the juvenile court lacked continuing jurisdiction over the child — and therefore the legal authority — to enter permanent orders allocating parental responsibilities.

¶ 55 Accordingly, we must vacate the judgment.

### III. Assessment of Father's Home

¶ 56 Mother also contends that the juvenile court erred by granting an APR to father when no agency had assessed the condition and

---

[2] Recall that the supreme court used this language in *C.O.*, in which the mother had made a verbal admission to support the entry of an adjudication order; the trial court accepted that admission but never entered a formal written order of adjudication.

safety of his home. Because we have already concluded that the judgment must be vacated, we need not address this argument.

## IV. Conclusion

¶ 57     The judgment is vacated, and the case is remanded to the juvenile court. Before the court may again consider granting a permanent APR order for the child, it must first enter an order adjudicating the child as dependent or neglected, assuming a factual and legal basis for doing so is established. The existing parenting time arrangement shall remain in place as a temporary order until subsequently modified by the juvenile court.

JUDGE DAILEY and JUDGE FOX concur.